704 P.2d 1102

**HAMILTON TEST SYSTEMS, INC., a Delaware corporation, Plaintiff,**

v.

**CITY OF ALBUQUERQUE, a New Mexico Municipal corporation, Defendant.**

**No. 15733.**

Supreme Court of New Mexico.

Aug. 16, 1985.

Sutin, Thayer & Browne, Norman S. Thayer, Albuquerque, Sutin, Thayer & Browne, Philip R. Higdon, Santa Fe, for plaintiff.

Rodey, Dickason, Sloan, Akin & Robb, P.A., John P. Eastham, Edward Ricco, Henry M. Bohnhoff, Albuquerque, for defendant.

## OPINION

FEDERICI, Chief Justice.

The plaintiff, Hamilton Test Systems, Inc. (Hamilton), brought suit against the defendant, the City of Albuquerque (the City), in the United States District Court for the District of New Mexico for money which Hamilton claims it is owed on a contract with the City. The United States District Court certified to this Court the following question of New Mexico law:

> By entering into the contract with Hamilton * * * as described in the * * * [parties'] Stipulation of Facts, did the City * * * "contract any debt" within the

meaning of Article IX, Section 12, of the New Mexico Constitution?

We hold that the City, by entering into its contract with Hamilton, did contract a "debt" within the meaning of N.M. Const. article IX, Section 12.

Article IX, Section 12 is a restriction upon municipal indebtedness. It provides, in pertinent part, that no city or other municipality may contract "any debt" without prior voter approval:

> No city, town or village shall contract any debt except by an ordinance, which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged, and which shall specify the purposes to which the funds to be raised shall be applied, and which shall provide for the levy of a tax, not exceeding twelve mills on the dollar upon all taxable property within such city, town or village, sufficient to pay the interest on, and to extinguish the principal of, such debt within fifty years. The proceeds of such tax shall be applied only to the payment of such interest and principal. No such debt shall be created unless the question of incurring the same shall, at a regular election for councilmen, aldermen or other officers of such city, town or village, or at any special election called for such purpose, have been submitted to a vote of such qualified electors thereof as have paid a property tax therein during the preceding year, and a majority of those voting on the question by ballot deposited in a separate ballot box when voting in a regular election, shall have voted in favor of creating such debt.

The parties' Stipulation of Facts, submitted to this Court with the certified question, states that the parties entered into a contract "under which Hamilton was to perform the service of operating for the City a motor vehicle emissions inspection program for a five year period (1983 through 1987)." The Stipulation also states that under the contract:

> Hamilton would collect from the owner of each inspected vehicle an inspection

fee in an amount to be determined by regulation. From the fee, Hamilton was to retain a portion known as the "base fee" and turn the remainder over to the City * * *. If at the end of the year Hamilton had retained more than was needed to pay its full contract price, the difference was to be credited to the City. *If at the end of the year Hamilton had retained less than was necessary to pay its full contract price, it was to invoice the City for the difference.* (Emphasis added.)

Thus the City was obligated to pay Hamilton at the end of each year for services performed that year, if the amount retained by Hamilton as "base fees" during that year fell short of the contract price for the year.

The contract also contained a provision specifying certain compensation for Hamilton if the contract were prematurely terminated. According to the Stipulation of Facts:

[T]he contract provided that if the City should default on its obligations, prematurely cancel the Contract or repeal the vehicle inspection ordinance, Hamilton would be paid equitable compensation including the cost to Hamilton of property acquired for performance of the contract, the cost to Hamilton of terminating contracts or leases entered into for performance of the contract, severance pay, winding down costs, overhead and indirect costs, and initial start-up costs. In addition, the City would pay Hamilton an amount to compensate Hamilton for its inability to obtain an equitable return on investment according to a declining scale based on the duration of contract performance. Hamilton was required to mitigate its losses, to limit its recovery to a maximum specified amount depending on the duration of contract performance, and to accept the contractually specified equitable compensation in full satisfaction of any claim against the City.

The contract was terminated in March 1984, after this Court held in *Chapman v. Luna*, 101 N.M. 59, 678 P.2d 687 (1984),

that certain portions of the emissions inspection program, unrelated to the question before us now, were unlawful.

The amount which Hamilton retained as "base fees" during 1983 and the first quarter of 1984 is less than the contract price for that period. Hamilton has invoiced the City for the difference, together with the contractually specified adjustments. The City has refused to pay these invoices.

Hamilton contends that the contract between the parties did not create a "debt" within the meaning of N.M. Const. article IX, Section 12, because the contract obligated the City to pay Hamilton each year only for services which Hamilton had already performed during that year. According to Hamilton, the so-called "service contract doctrine" states that a contract of this type does not create a "debt" within the meaning of constitutional debt restrictions. Hamilton further contends that the part of the contract providing for certain compensation in the event of early termination did not create a "debt" because it merely specified and limited damages which would arise by law for breach of contract.

New Mexico has never recognized the service contract doctrine as an exception to its constitutional restriction upon municipal debt. This Court did recognize such an exception in *Raton Waterworks Co. v. Town of Raton*, 9 N.M. 70, 97–98, 49 P. 898, 907–08 (1897), *rev'd on other grounds*, 174 U.S. 360, 19 S.Ct. 219, 43 L.Ed. 1005 (1899), but that case was decided prior to the adoption of the New Mexico Constitution in 1911, and it interpreted debt restrictions which were contained in an act of Congress and in the territorial statutes. *See also Palmer v. City of Albuquerque*, 19 N.M. 285, 300, 142 P. 929, 934 (1914) (dictum). Since then, while this Court has not been called upon to answer the specific question before us now, we have indicated that any agreement by which a municipality obligates itself to pay out of tax revenues, and commits itself beyond revenues for the current fiscal year, falls within the terms of the constitutional debt restriction. *State Highway Commission v. City of Az-*

*tec,* 77 N.M. 524, 424 P.2d 801 (1967); *Henning v. Town of Hot Springs,* 44 N.M. 321, 102 P.2d 25 (1939); *City of Santa Fe v. First National Bank in Raton,* 41 N.M. 130, 65 P.2d 857 (1937); *Lanigan v. Town of Gallup,* 17 N.M. 627, 131 P. 997 (1913).

Courts in several states have rejected the service contract doctrine, holding that an obligation is no less a "debt" merely because it is contingent upon the future provision of services. *See Adamowski v. Public Building Commission,* 11 Ill.2d 125, 137–38, 142 N.E.2d 67, 74 (1957); *Simmons v. City of Missoula,* 144 Mont. 210, 214, 395 P.2d 249, 251 (1964); Magnusson, *Lease-Financing by Municipal Corporations,* 25 Geo.Wash.L.Rev. 377, 382–83 (1957). We agree. The service contract doctrine is essentially a device to evade constitutional debt restrictions, and it would allow just what our constitutional debt restriction is meant to prohibit: the burdening of future taxpayers, without the prior approval of the municipality's voters. *See Lanigan v. Town of Gallup; see also* Bowers, *Limitations on Municipal Indebtedness,* 5 Vand.L.Rev. 37 (1951); Bowmar, *The Anachronism Called Debt Limitation,* 52 Iowa L.Rev. 863 (1967); Magnusson, *Lease-Financing by Municipal Corporations. But see, e.g., Macon Ambulance Service, Inc. v. Snow Properties, Inc.,* 218 Ga. 262, 127 S.E.2d 598 (1962) (adopting service contract doctrine); *Board of Supervisors v. Massey,* 210 Va. 680, 173 S.E.2d 869 (1970) (same).

We recognize that our holding may make more cumbersome the process of municipal financing. If any change is desired, however, it must be accomplished through constitutional amendment. *See* Magnusson, *Lease-Financing by Municipal Corporations,* 25 Geo.Wash.L.Rev. at 394–96.

We conclude that the City, by entering into the contract with Hamilton in the instant case, did contract a "debt" within the meaning of N.M. Const. article IX, Section 12.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN and STOWERS, JJ., concur.