766 P.2d 1328

**Salomon MONTANO, individually and as Valencia County Commissioner, Plaintiff–Appellant,**

v.

**Paul GABALDON, Valencia County Commissioner, and Frank A. Gurule, Valencia County Commissioner, Defendants–Appellees.**

**No. 17937.**

Supreme Court of New Mexico.

Jan. 9, 1989.

Rehearing Denied Jan. 31, 1989.

Thomas C. Esquibel, Los Lunas, Hal Stratton, Atty. Gen., Scott Spencer, Asst. Atty. Gen., Santa Fe, for appellant.

Modrall, Sperling, Roehl, Harris & Sisk, Arthur D. Melendres, Suzanne R. Spiers, Albuquerque, for defendants-appellees.

Kemp, Smith, Duncan & Hammond, Donald B. Monnheimer, Bruce E. Castle, Thomas L. English, Sp. Asst. Attys. Gen., Albuquerque, for amicus curiae Atty. Gen.

Steven M. Barshov, New York City, Douglas W. Fraser, Santa Fe, for amicus curiae NM Municipal League.

Sehrman & Howard, Mike Groshek, Denver, Colo., Douglas W. Fraser, Santa Fe, for amicus curiae NM Ass'n of Counties.

OPINION

SCARBOROUGH, Chief Justice.

This suit involves a constitutional question arising out of the decision of the Board of County Commissioners of Valencia County to enter into a Lease with Option to Purchase Agreement (lease) with a private corporation for the use of a new jail facility to be constructed on county-owned land. Valencia County voters have twice voted down referendums to finance a new jail. Plaintiff-appellant and County Commissioner Salomon Montano brought this declaratory judgment action questioning the legality of the lease given the restrictions in Article IX, Section 10 of the New Mexico Constitution. That provision requires the approval of county voters prior to the creation of county indebtedness for the purpose of erecting public buildings. The district court granted summary judgment in favor of defendants-appellees, finding that the lease did not create an unconstitutional debt. This appeal follows. We reverse and hold that the lease creates indebtedness within the meaning of Article IX, Section 10 of the New Mexico Constitution.

The lease in question requires Valencia County to make semi-annual payments, denominated as rent, for the use of a new facility which is to be built by a private contractor on county-owned land. Certificates of Participation would be issued by the contractor and sold to private investors

to raise the costs of construction ($3,100,-000). The private contractor would hold title to the "project," which is defined as the land, the improvements, and the fixtures, until and unless the County exercised its purchase option. The option to purchase the facility could be exercised during the twenty-year term of the lease by payment according to an amortization schedule included in the lease. Or, should the County continue to make the scheduled rental payments for the entire twenty-year term, the County would acquire ownership of the facility, and reacquire ownership of the land, after the final payment on July 1, 2008.

The lease also contains a "non-appropriation" provision which allows for termination of the lease at the end of any fiscal year should the Board of County Commissioners not appropriate sufficient funds to pay the rent. In addition, the lease defines a number of conditions in which the County may be declared in default, including failure to make a scheduled payment for a period of ten business days, failure to observe certain covenants, or filing of voluntary bankruptcy by the County. If the County exercised its termination rights, or if the private contractor terminated the lease upon default by the County, the contractor or its assigns would acquire permanent title to the land and the jail facility.

Article IX, Section 10 of the New Mexico Constitution provides in pertinent part as follows:

> No county shall borrow money except for the following purposes:
>
> A. erecting, remodeling and making additions to necessary public buildings * * *
>
> In such cases, indebtedness shall be incurred only after the proposition to create such debt has been submitted to the qualified electors of the county and approved by a majority of those voting thereon.

N.M. Const. art. IX, § 10 (Cum.Supp.1988).

This Court will assume that the framers were familiar with similar constitutional provisions from other states and their judicial interpretation when they drafted the New Mexico Constitution. *Jaramillo v. City of Albuquerque,* 64 N.M. 427, 430, 329 P.2d 626, 628 (1958). It is apparent from the cases cited in 1 J. Dillon, *Law of Municipal Corporations,* §§ 193–200 (5th ed. 1911) [hereinafter *Dillon*], that the courts at the turn of the century were familiar with the basic issues involved here. In fact, these constitutional provisions were primarily a response to the heavy borrowing, and subsequent default, engaged in by many states prior to 1840. *In re Constitutionality of Chapter 280, Oregon Laws 1975,* 276 Or. 135, 554 P.2d 126 (1976). Accordingly, indebtedness provisions such as ours were generally given an expansive definition. Dillon writes: "What are debts? In defining these terms it has been declared that the language of the Constitution is exceedingly broad, and should not receive a narrow or strained construction * * * *" *Dillon* § 193 at 349. When a local government pledged property as security for replayment of a debt, this was usually held to constitute the creation of indebtedness. *Id.* § 199.

In keeping with the intent of the framers, a broad interpretation of the debt limitation has long been favored in New Mexico. Regardless of whether an agency of government is bound *in personam* to pay a debt, a borrowing has been deemed to take place within the prohibition of Article IX, Section 10 of the Constitution when, by transfer of legal title and/or the payment of money, the agency of government obtains an equitable interest in property which is subject to forefeiture in the event future periodic payments are not made as agreed. *See, e.g., Palmer v. City of Albuquerque,* 19 N.M. 285, 142 P. 929 (1914). An agreement that commits the county to make payments out of general revenues in future fiscal years, without voter approval, violates the New Mexico Constitution even if that obligation is merely an "equitable or moral" duty, *State ex rel. Capitol Addition Building Commission v. Connelly,* 39 N.M. 312, 318, 46 P.2d 1097, 1100 (1935) (quoting *Seward v. Bowers,* 37 N.M. 385,

24 P.2d 253 (1933)), or a "contingent" duty, *State Office Building Commission v. Trujillo*, 46 N.M. 29, 45, 120 P.2d 434, 444 (1941) (quoting *City of Santa Fe v. First National Bank*, 41 N.M. 130, 138, 65 P.2d 857, 862 (1937)).

The appellees argue no unconstitutional debt is created by this lease because there is no legal obligation either to continue the lease from year to year or to purchase the facility. However, we are of the opinion that once the County accepted this lease, it would be obligated to continue making rental payments in order to protect a growing equitable interest in the facility, as well as to protect the County's interest in the title to County land.[1] This is the type of future economic commitment that requires the arrangement be approved by the voters.

Additionally, consistent with our conclusion that the obligation in question falls within the intended broad interpretation of indebtedness, we find the lease-purchase agreement to be a "lease" in form only. If an option price is nominal or nonexistent, a purported lease may be treated as a sale. *See Springer Corp. v. American Leasing Co.*, 80 N.M. 609, 611, 459 P.2d 135, 137 (1969); *Transamerica Leasing Corp. v. Bureau of Revenue*, 80 N.M. 48, 53, 450 P.2d 934, 939 (Ct.App.1969). In this case, the County acquires ownership of the facility simply by making the agreed rental payments over the twenty-year term; however, it loses all interest in the project if it exercises its termination rights or defaults. The only method by which the County may redeem its investment is by tendering the full purchase price of the facility, plus interest. Accordingly, each semi-annual "rental" payment represents more than just a present debt for the use of the facility for a six month period. The arrangement is in essence an installment-purchase agreement for the acquisition of a public building, with outside financing and payments spread over twenty years, and as such it requires voter approval.

Local governments have no authority under our Constitution to borrow money or issue bonds absent a delegation by the legislature of all or part of the legislature's plenary authority to create debts. *See Board of Com'rs v. State*, 43 N.M. 409, 411, 94 P.2d 515, 516 (1939). In the present context, the legislature has provided that counties may enter into lease-purchase agreements. NMSA 1978, § 6–6–12. We recognize that county governments may have entered into lease-purchase agreements similar to the agreement under consideration here, in which the option purchase price is nominal or nonexistent, in reliance upon a 1976 Attorney General's Opinion which misconstrued the language of our decisions in *Connelly* and *Trujillo*. *See* AG Op. No. 20 (1976). For this reason, this ruling shall have modified prospective effect only. See *Hicks v. State*, 88 N.M. 588, 592–94, 544 P.2d 1153, 1157–59 (1975), as well as the dissent of Montoya, J., *id.* at 595–96, 544 P.2d at 1160–61, for a discussion of prospective versus modified prospective application of a new rule of law.

The order of the district court finding that the lease will not violate Article IX, Section 10 of the New Mexico Constitution, and granting summary judgment in favor of defendants-appellees, is reversed, and the case is remanded for action consistent with this opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and RANSOM, J., concur.

---

1. The lease divides rental payments into "principal" and "interest" according to a twenty-year amortization schedule. At any time during the lease the County could exercise its purchase option by payment of the initial cost of construction ($3,100,000) less accrued payment of principal. Thus, the lease in question is significantly different from a lease purchase agreement where the option price is tied to the actual fair market value of the facility at the time the option is exercised. We do not accept the appellees' argument that the amortization schedule merely reflects an estimate of the fair market value of the jail facility as it depreciates over time. If the facility were adequately designed and maintained it would be unreasonable to assume that after two decades of use it would have a market value of zero.