**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 17, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PAUL BORDE; FOREST BOSTICK,

     Plaintiffs–Appellants,

v.

BOARD OF COUNTY
COMMISSIONERS OF LUNA
COUNTY, NEW MEXICO; JOHN
SUTHERLAND;  R. JAVIER DIAZ;
FRED WILLIAMS, in their individual
capacities,

     Defendants–Appellees.

No. 12-2028
(D.C. No. 2:09-CV-1185-WDS-GBW)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

Plaintiffs in this litigation signed employment contracts and went to work for the county government of Luna County, New Mexico.  The contracts said that Plaintiffs would receive generous severance payments if they ever were terminated from their jobs. When Luna County's Board of County Commissioners voted to terminate the contracts early and then refused to pay any severance benefits, Plaintiffs sued.  The district court

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

determined that Plaintiffs' contracts were void under the New Mexico state constitution. Finding that Plaintiffs had no protected property interest in the severance benefits, the district court dismissed all of Plaintiffs' claims. Plaintiffs now appeal the district court's decision. Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM the decision of the district court in all respects.

## I.    BACKGROUND

Plaintiffs–Appellants Paul Borde and Forest Bostick had worked for Luna County (the County) in various capacities for a number of years before they signed new employment contracts with the County on February 26, 2008. Mr. Borde was hired as the County's Public Works Director, and Mr. Bostick was hired as its Risk Manager/Emergency Management Coordinator.[1] The contracts were identical. Their initial terms of employment were to be for three years. The contracts would then automatically renew for another three years at the end of the initial term, provided that neither party to the agreement had given notice of nonrenewal at least ninety days before the expiration of the three-year term.

Under the employment contracts, Mr. Borde and Mr. Bostick were at-will employees. *See* App. at 39, 46 ("The County may terminate the Employee at any time during the contract."). But the contracts also said that Mr. Borde and Mr. Bostick would

---

[1]    For reasons not entirely clear, Mr. Bostick "retired" from his position on July 31, 2008 and then contracted to work as a "County Jail Administrator consultant" from August 1 through November 1, 2008. *See* App. at 16-17. On November 1, 2008, he then resumed work as the County's Risk Manager/Emergency Management Coordinator under the original terms of his February 26, 2008 contract.

-2-

not go unprotected in the event of termination—far from it. Section 5(B) of their contracts contained the following provision:

> In the event of termination during the first year of the contract term, the Employee shall receive the balance of the contract compensation amount due plus severance pay equal to six (6) months base pay; if terminated during the second year, the Employee shall receive the balance of the contract compensation due plus severance pay equal to twelve (12) months of base pay; if terminated in the third year, the Employee shall receive the balance of the contract compensation due plus severance pay equal to eighteen (18) months of base pay.

*Id.*

Moreover, if the County opted not to renew the contracts at the conclusion of the three-year term, then Mr. Borde and Mr. Bostick were to "receive severance pay equal to eighteen (18) months of current base pay." *Id.* In addition, Mr. Borde and Mr. Bostick were entitled to five weeks per year of paid time off. If Mr. Borde or Mr. Bostick were terminated, they were still entitled under their contracts to receive the value of any paid time off that had accrued. According to the contracts, the only way that Mr. Borde and Mr. Bostick would not receive their post-termination severance benefits was if they were convicted of a felony. Finally, section 10 of the contracts dealt with the manner in which County funds would be appropriated to pay Mr. Borde and Mr. Bostick:

> [T]he County shall, in the current fiscal year, budget funds to pay for all subsequent years of the contract term. If the contract is renewed for an additional three (3) year term . . . , the County shall budget funds to pay for all years of the contract in the then current fiscal year. Any increase in the severance amount arising from cost of living or other changes shall be budgeted and allocated in the same year of any such pay increase.

*Id.* at 41, 48.

-3-

Mr. Borde and Mr. Bostick worked for the County for about sixteen months after entering into the employment agreements. On June 23, 2009, the County's Board of County Commissioners voted to terminate Mr. Borde and Mr. Bostick's employment contracts by a 2–1 vote.[2] Neither Mr. Borde nor Mr. Bostick had been convicted of a felony. Defendants R. Javier Diaz and Fred Williams cast their votes in favor of terminating the contracts. Mr. Borde and Mr. Bostick were not given any notice that their contracts would be discussed at the County Commissioners' meeting, and they did not have an opportunity to be heard on the matter. After the vote, County Manager (and Defendant) John Sutherland called Mr. Borde and Mr. Bostick to tell them that their contracts had been terminated, effective immediately. He also informed them that the County was not going to pay their severance benefits under the contracts.[3] Mr. Borde and Mr. Bostick both made demands for payment of their severance, but their calls went unheeded by the County.

On December 18, 2009, Mr. Borde and Mr. Bostick brought this lawsuit against

---

[2]    In their complaint, Mr. Borde and Mr. Bostick allege the County Commissioners voted to "terminate" their employment contracts. Defendants prefer to say that the County Commissioners "voided" the contracts. Because at this stage of litigation we must take all of a plaintiff's well-pleaded material allegations as true, *see Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc), we refer to the County Commissioners' vote as "terminating" the contracts.

[3]    Under the contracts, Mr. Borde and Mr. Bostick were entitled to receive both severance pay and accrued paid time off. Because there is no meaningful distinction in this case between the severance pay and the paid time off, we will simply refer to the amount claimed by Mr. Borde and Mr. Bostick as "severance."

the Board of County Commissioners (in effect, against the County) and against Commissioners Diaz and Williams and County Manager Sutherland in their individual capacities. Their complaint contained both federal and state-law claims. First, Mr. Borde and Mr. Bostick alleged two claims under 42 U.S.C. § 1983 against all defendants: (1) denial of substantive due process, based on the deprivation of their property interest in either continued employment or severance pay; and (2) denial of procedural due process, based on the deprivation of their property interest without the opportunity to be heard in a meaningful time and manner. In conjunction with the § 1983 claims, Mr. Borde and Mr. Bostick also asserted a separate claim against the County under the *Monell* doctrine, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), which in some instances extends § 1983 liability to municipalities and other units of local government. Their fourth claim was against the County, for breach of contract. In their fifth and final claim, Mr. Borde and Mr. Bostick alleged the County had violated a New Mexico statute, N.M. Stat. Ann. § 50-4-4, which requires an employer to remit unpaid wages to a discharged employee within a fixed amount of time.

The parties agreed to proceed before a magistrate judge. *See* 28 U.S.C. § 636(c); Fed R. Civ. P. 73. Initially, Defendants Diaz, Williams, and Sutherland sought dismissal of the claims against them, arguing that their conduct constituted legislative activity entitling them to absolute immunity. The district court denied their motion, and we affirmed that ruling on interlocutory appeal in an unpublished opinion. *See Borde v. Bd. of Cnty. Comm'rs*, 423 F. App'x 798 (10th Cir. 2011). Defendants also filed (1) a motion

-5-

for judgment on the pleadings under Fed. R. Civ. P. 12(c) on the claim for breach of contract, and (2) a motion to dismiss the § 1983 claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief could be granted. The district court first ruled on the motion for judgment on the pleadings. Finding that the employment contracts violated the New Mexico state constitution by creating an unconstitutional debt, the district court held the contracts were void and granted judgment on the pleadings on the breach-of-contract claim.

In light of this ruling, Defendants argued that because the employment contracts were void from the outset, Mr. Borde and Mr. Bostick never had a protected property interest in their severance pay. Mr. Borde and Mr. Bostick countered by asserting that even if the contracts were void, they still had a protected property interest in their severance benefits stemming from the Luna County Personnel Ordinance, which contains certain provisions governing termination and grievance procedures for some of the County's employees. In brief, Mr. Borde and Mr. Bostick contended that in the absence of a valid employment contract, they became Luna County employees subject to the procedural safeguards afforded by the County's Personnel Ordinance. Mr. Borde and Mr. Bostick sought leave to amend their complaint to include a new § 1983 claim based on their purported rights under the Personnel Ordinance, along with a new state-law claim for breach of implied contract.[4]

---

[4] The proposed amended complaint did not include a separate § 1983 claim against the County based on *Monell* liability. In their briefing, Mr. Borde and Mr. Bostick clarify

The district court agreed with Defendants and dismissed the § 1983 claims for failure to state a claim on which relief could be granted. The district court further denied Mr. Borde and Mr. Bostick leave to amend their complaint, reasoning that any amendment would be futile. Lastly, the district court declined to exercise supplemental jurisdiction over the remaining state-law claim, which was based on the County's alleged violation of N.M. Stat. Ann. § 50-4-4. This timely appeal followed.

## II.     STANDARD OF REVIEW

This court applies the same standard of review to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) as it does to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[5] *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). In either case, our review is de novo. *Id.* In conducting our

---

that they were not asserting a separate claim of liability against the County by invoking *Monell*, but rather "intended only to give notice that they claimed the actions of the Defendants constituted the official policies of Luna County." Appellants' Br. at 23-24 n.2. Because we find that Mr. Borde and Mr. Bostick had no property interest entitled to the protections of due process, it is not necessary for us to apply *Monell* analysis to the County's actions in terminating the employment contracts.

[5]     In the typical course of litigation, a party will file a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted either before filing an answer or with the answer itself. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002). "If the defendant makes the motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings." *Id.* In this case, Defendants first filed their answer, then filed their motion for judgment on the pleadings, and afterward filed their 12(b)(6) motion. Because we apply the same standard of review when evaluating 12(b)(6) motions and motions for judgment on the pleadings—and because our decision is the same regardless of the finer procedural distinctions—we will keep the designations used by the parties in their pleadings.

review, "[w]e must accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012) (internal quotation marks omitted); *see also Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (stating that, in reviewing a grant of judgment on the pleadings, a court will "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same").

Fed. R. Civ. P. 12(d) requires that "[i]f . . . matters outside the pleadings are presented to . . . the court, the motion must be treated as one for summary judgment." "The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Notwithstanding these commands, our court has acknowledged that when a document is not incorporated by reference or attached to the complaint, but "is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id.* Although Mr. Borde and Mr. Bostick did not attach copies of the employment contracts to their complaint, they refer to the contracts in their complaint and, indeed, the contracts are central to their claims. In addition, Defendants attached authentic copies of the contracts to their motion for judgment on the pleadings. For these reasons, we will treat Defendants' 12(b)(6) and 12(c) motions as properly presented.

-8-

We review a denial of leave to amend for abuse of discretion. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). "Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). We consider a proposed amendment to be futile "if the complaint, as amended, would be subject to dismissal." *Id.*

This case also requires us to interpret a provision of the New Mexico state constitution. The precise issue before us—whether the type of multiyear employment contract entered into by the County with Mr. Borde and Mr. Bostick is valid under New Mexico law—has not been squarely resolved by a reported opinion of the New Mexico Supreme Court or of lower courts within the state in their opinions presented to us. In a case such as this one,

> [w]here no controlling state decision exists, [we] must attempt to predict what the state's highest court would do . . . . [We] may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law. Ultimately, however, the Court's task is to predict what the [New Mexico] [S]upreme [C]ourt would do. Our review of the district court's interpretation of state law is *de novo*.

*Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007)) (internal quotation marks and citations omitted) (alterations in original).

## III.    DISCUSSION

There are two principal issues before us on appeal.  First, Mr. Borde and Mr. Bostick assert that the district court erred in finding their employment contracts were void *ab initio* because they violate the New Mexico state constitution.  Second, Mr. Borde and Mr. Bostick argue that even if their contracts are void, they still possess a protected property interest in their severance benefits that entitles them to compensation from the County.

### A.

We first turn to the question whether the contracts are valid under New Mexico law.  Mr. Borde and Mr. Bostick challenge the district court's determination that the terms of their employment contracts with the County violated article IX, section 10 of the New Mexico state constitution.  "A county in New Mexico is the creation of the state and derives all of its powers therefrom."  *Allstate Leasing Corp. v. Bd. of Cnty. Comm'rs*, 450 F.2d 26, 28 (10th Cir. 1971) (citing *Dow v. Irwin*, 157 P. 490, 491 (N.M. 1916)).  Article IX, section 10 of the New Mexico state constitution limits the purposes for which a New Mexico county can accumulate debt.  It also prescribes the steps a county must take before it can properly incur a debt.

Article IX, section 10 is entitled "County indebtedness."  Its terms provide:

No county shall borrow money except for the following purposes:

A. erecting, remodeling and making additions to necessary public buildings;

-10-

B. constructing or repairing public roads and bridges and purchasing capital equipment for such projects;

C. constructing or acquiring a system for supplying water, including the acquisition of water and water rights, necessary real estate or rights-of-way and easements;

D. constructing or acquiring a sewer system, including the necessary real estate or rights-of-way and easements;

E. constructing an airport or sanitary landfill, including the necessary real estate;

F. acquiring necessary real estate for open space, open space trails and related areas and facilities; or

G. the purchase of books and other library resources for libraries in the county.

In such cases, indebtedness shall be incurred only after the proposition to create such debt has been submitted to the registered voters of the county and approved by a majority of those voting thereon. No bonds issued for such purpose shall run for more than fifty years. * * *

A New Mexico county may thus acquire debt only in limited, carefully enumerated circumstances—largely relating to the creation and maintenance of county infrastructure—and then only after the debt proposal has been submitted to and approved by the county's voters.

The New Mexico courts have consistently interpreted "debt," as contemplated under the state constitution, as "an unconditional obligation to pay." *Allstate*, 450 F.2d at 29. In an early decision, the New Mexico Supreme Court observed that

[t]he idea of a "debt" in the constitutional sense is that an obligation has arisen out of contract, express or implied, which entitles the creditor unconditionally to receive from the debtor a sum of money, which the debtor is under a legal, equitable, or moral duty to pay without regard to any future contingency.

*Seward v. Bowers*, 24 P.2d 253, 253 (N.M. 1933); *see also State* ex rel. *Capitol Addition Bldg. Comm'n v. Connelly*, 46 P.2d 1097, 1100 (N.M. 1935) (same). In the present case, the district court found that the County's employment contracts with Mr. Borde and Mr. Bostick created a monetary obligation that fell within the parameters of "debt" under New Mexico law. Because the debt created by the employment contracts did not satisfy the requirements of article IX, section 10, the district court held the agreements were unconstitutional and therefore void *ab initio*.

The district court based its ruling in large part on the reasoning found in two decisions of the New Mexico Supreme Court: *Hamilton Test Systems, Inc. v. City of Albuquerque*, 704 P.2d 1102 (N.M. 1985), and *Montano v. Gabaldon*, 766 P.2d 1328 (N.M. 1989). In both *Hamilton* and *Montano*, the New Mexico Supreme Court invalidated agreements entered into between local government units and private parties because the contracts at issue gave rise to debt, without voter approval, that was impermissible under the state constitution. The common thread running through *Hamilton* and *Montano* is that a New Mexico political subdivision had committed itself to making payments out of its tax revenues in future fiscal years, without the prior approval of voters. In both cases, the New Mexico Supreme Court held the agreements violated the state constitution. For the same reason, the district court in this case ruled that Mr. Borde's and Mr. Bostick's employment contracts were likewise made in violation of the New Mexico state constitution. We agree.

-12-

Mr. Borde and Mr. Bostick were to be employed for three years under their contracts with the County. Their employment terms would then automatically renew for another three years, unless one of the parties gave timely notice otherwise. The contracts stated that if either Mr. Borde or Mr. Bostick were terminated in his first year of employment, he would receive six-months' worth of his base pay as severance; if terminated in his second year, twelve-months' worth; if terminated in his third year, eighteen-months' worth. Upon termination, Mr. Borde and Mr. Bostick would also be entitled to receive the balance of their salary that would have been paid to them had they completed the full three-year term of employment. In addition, they would obtain the benefit of up to five weeks of paid time off. Finally, if the County decided not to renew their contracts after three years, Mr. Borde and Mr. Bostick would still get a payment equal to eighteen months of current base pay.

Mr. Borde and Mr. Bostick began their terms of employment on February 26, 2008. On June 23, 2009, they were terminated. That is to say, the termination came in the second year of their employment. Mr. Borde and Mr. Bostick allege that, based on their contractual severance provision, they "should have been paid for the remaining twenty (20) months and three (3) days of the contract term, plus an additional twelve (12) months, for a total of thirty-two (32) months and three (3) days," plus the value of their accrued paid time off. App. at 18-19. Although the parties do not discuss the amount of Mr. Borde and Mr. Bostick's compensation in their briefing, it appears from the record that they both received monthly pay of $7475.00. *See* App. at 76.

-13-

The district court correctly found the employment contracts created a "debt" for the County that violates article IX, section 10 of the New Mexico state constitution. The contracts impose on the County an obligation to pay significant sums of money as severance to Mr. Borde and Mr. Bostick in the event of termination or nonrenewal of their contracts. The problem is that, in committing to pay sizeable compensation to Mr. Borde and Mr. Bostick in the years following the formation of the contracts, the County has bound itself to make expenditures beyond the fiscal year in which the contracts were made. In other words, by entering into the contracts the County obligated itself to pay some amount of money at a future time, even though the County might not have the funds for payments in those future years. The New Mexico Supreme Court says this is not allowed: "An agreement that commits the county to make payments out of general revenues in future fiscal years, without voter approval, violates the New Mexico Constitution . . . ." *Montano*, 766 P.2d at 1329.

The New Mexico courts favor a "broad interpretation of indebtedness." *Id.* at 1330. In *Montano*, the New Mexico Supreme Court traced the origins of its "expansive definition" of constitutional debt to the time of the framing of the state constitution. *Id.* The New Mexico Supreme Court "will assume that the framers were familiar with similar constitutional provisions from other states and their judicial interpretation when they drafted the New Mexico Constitution." *Id.* at 1329. New Mexico entered the Union in 1912. The recently ended previous century had seen widespread borrowing and rampant defaults by state and local governments across the country. In an effort to curb these

-14-

excesses, many states adopted debt limitations of the kind later ensconced in the New Mexico state constitution. *See id.* (noting that "these constitutional provisions were primarily a response to the heavy borrowing and subsequent default, engaged in by many states"); *see also* In re *Constitutionality of Ch. 280, Or. Laws 1975*, 554 P.2d 126, 129 (Or. 1976) (recounting how in the 1870s "many states also began limiting by constitutional provisions the ability of local government entities—which had gone deeply into debt primarily to finance the railroad expansion—to incur debts"); Jon Magnusson, *Lease-Financing by Municipal Corporations As a Way Around Debt Limitations*, 25 Geo. Wash. L. Rev. 377, 381 (1957) ("Local debt increased rapidly until the business crisis of 1873 brought about many municipal defaults caused by excessive debt. The solution for fiscal irresponsibility was again found in constitutional provisions limiting debt-incurring powers."). With this historical and interpretive framework in mind, we hold that the County's employment contracts with Mr. Borde and Mr. Bostick created debt that was invalid under New Mexico's constitution.

"'What are debts? In defining these terms it has been declared that the language of the Constitution is exceedingly broad, and should not receive a narrow or strained construction . . . .'" *Montano*, 766 P.2d at 1329 (quoting 1 J. Dillon, *Law of Municipal Corporations* § 193 (5th ed. 1911)). The *Hamilton* case serves as a paradigm of the way in which New Mexico courts treat the issue of unconstitutional debt. In *Hamilton*, the City of Albuquerque contracted with the plaintiff, Hamilton Test Systems, to run an inspection program for motor-vehicle emissions for a five-year period. 704 P.2d at 1103.

-15-

Hamilton would collect an inspection fee from the owner of each vehicle, keep a portion of the money as a "base fee," and then turn the remainder over to the City. *Id.* at 1103-04. At the end of each year, if Hamilton retained an amount in fees greater than the contract price, then the difference would be credited to the City. *Id.* at 1104. But if Hamilton retained a lesser amount, then the City was to make up the difference. *Id.* ("Thus the City was obligated to pay Hamilton at the end of each year for services performed that year, if the amount retained by Hamilton as 'base fees' during that year fell short of the contract price for the year."). The contract also provided that Hamilton would receive certain compensation—including severance pay—if the City terminated the contract early. *Id.*

As it happened, the City terminated the contract early, and Hamilton sued to recover the difference between the collected base fees and the contract price owed to him by the City. *Id.* The New Mexico Supreme Court refused to enforce the agreement, holding that the City, by entering into the contract with Hamilton, had contracted an impermissible "debt" under article IX, section 12 of the New Mexico state constitution.[6] *Id.* at 1105. The court reasoned that "any agreement by which a municipality obligates itself to pay out of tax revenues, and commits itself beyond revenues for the current fiscal year, falls within the terms of the constitutional debt restriction." *Id.* at 1104.

---

[6]     Article IX, section 12 deals with New Mexico cities, towns, and villages; Article IX, section 10 applies to New Mexico counties. Although these two sections contain slight differences of terminology, they are plainly designed to ward off the same ill: the accumulation of excessive debt by units of local government.

The contract at issue in *Hamilton* violated the state constitution because it potentially obligated the City to, in effect, subsidize Hamilton's business losses during any year of the five-year contract. This sum could not be ascertained—let alone budgeted for by the City—in a single fiscal year. In essence, the contract created a looming debt obligation for the City that, if triggered, could drain its tax revenues years after the contract first came into existence, without ever giving the City's voters a say in the matter.

In this case, Mr. Borde and Mr. Bostick argue their employment contracts are saved from the infirmity that invalidated the agreement in *Hamilton* because section 10 of their contracts states that "the County shall, in the current fiscal year, budget funds to pay for all subsequent years of the contract term." App. at 41, 48. This argument has surface appeal. But, for reasons explained below, we are not persuaded.

Several years after deciding *Hamilton*, the New Mexico Supreme Court again faced the issue of the validity of debt in *Montano*. There, a different New Mexico county had signed a lease-purchase agreement with a private corporation for the construction of a new jail. 766 P.2d at 1328. The lease required the county to make semiannual rent payments to the private contractor over a twenty-year period. *Id.* at 1328-29. At the end of that period, the county would acquire ownership of the jail facility and reacquire ownership of the property where the jail stood. *Id.* at 1329. The lease agreement also featured a provision that permitted "termination of the lease at the end of any fiscal year should the Board of County Commissioners not appropriate sufficient funds to pay the

rent." *Id.* But, if the county terminated the lease, the private contractor "would acquire permanent title to the land and the jail facility." *Id.*

The New Mexico Supreme Court held that the agreement violated article IX, section 10. The court stated that "once the County accepted this lease, it would be obligated to continue making rental payments in order to protect a growing equitable interest in the facility." *Id.* at 1330. In short, the county had yoked itself to "the type of future economic commitment that requires the arrangement be approved by the voters." *Id.* We believe the employment contracts in this case contain the same constitutional flaws that defeated the agreements in *Hamilton* and *Montano*. The overall effect of the employment contracts is to obligate the County to expend public funds in future years for future services. This is improper under article IX, section 10 of the New Mexico state constitution.

Mr. Borde and Mr. Bostick claim their contracts avoid the *Hamilton* problem because section 10 of their agreements requires the County to budget enough money in the current fiscal year to pay for every subsequent year of the contracts. They are correct insofar as the employment contracts' language has apparently been worded in an effort to fit within the letter of New Mexico law. But artful drafting is not enough to salvage Mr. Borde's and Mr. Bostick's severance benefits. As previously noted, Mr. Borde's and Mr. Bostick's contracts provided for, *inter alia*, (1) three years of paid employment; (2) three additional years of paid employment upon renewal of the contracts; (3) severance pay equal to eighteen months of base pay in the event of nonrenewal; (4) incrementally

-18-

increasing severance pay in the event of termination during the initial term of the contracts; (5) five weeks of annual paid time off; and (6) periodic cost-of-living increases to both the base pay and severance.

Section 10 of Mr. Borde and Mr. Bostick's employment contracts simply states that "the County shall, in the current fiscal year, budget funds to pay for all subsequent years of the contract term."  App. at 41, 48.  The section goes on to say that, if the contract is renewed for another three years, then the County must again "budget funds to pay for all years of the contract in the then current fiscal year."  *Id.*  The contract also provides that "[a]ny increase in the severance amount arising from cost of living or other changes shall be budgeted and allocated in the same year of any such pay increase."  *Id.*

In considering this contractual provision, our focus must be on what the County is actually budgeting in the current fiscal year.  A plain reading of the contracts' section 10 reveals that neither the base-pay amount for a second three-year term nor any cost-of-living adjustment to the severance amount can be budgeted in the fiscal year in which the contract was made.  Presumably, the severance penalty for nonrenewal would not be budgeted in the first instance, either.  And it is ambiguous at best whether the maximum amount of severance-pay liability during the initial employment term—the equivalent of eighteen months of base pay—is also to be included in the budget for the County's current fiscal year.  All told, a plain reading of Mr. Borde's and Mr. Bostick's contracts makes clear that the County has incurred debt that necessarily burdens future tax revenues in future years.

Even if the County had somehow managed to provide for every financial obligation and contingency in the initial fiscal year, the employment contracts would still be unconstitutional because they also bind the County to a forbidden "future economic commitment" under *Montano*. 766 P.2d at 1330. In *Montano*, the county had the power to terminate its lease-purchase agreement at the end of any fiscal year where it lacked sufficient funds to continue paying rent. *Id.* at 1329. But the court in *Montano* recognized that this was never a realistic option because the price of termination for the county would be the loss of the jail facility and its land. *Id.* In other words, the cost of terminating the contract was too onerous to make doing so a financially viable option for the county. That meant the county was stuck with a twenty-year economic commitment that was never approved by the county's voters, as the state constitution requires.

Under the employment contracts in this case, Mr. Borde and Mr. Bostick were owed increasing amounts of severance pay the longer they stayed in their jobs. If they were terminated, they would also receive the balance of their regular base pay under the contracts. And even if the County simply chose not to renew their contracts after three years, Mr. Borde and Mr. Bostick were still entitled to receive eighteen months of salary. The district court commented that the severance provisions acted to "financially handcuff, and thereby control, the future decisions made by the County." App. at 102. The metaphor is apt. Simply put, the contracts, as drafted, made it too expensive for the County to do anything but keep Mr. Borde and Mr. Bostick employed for a long time. The contracts coerced the County—and, more importantly, its taxpayers—to keep paying

for years to come. In order for the contracts to avoid entanglement with a future economic commitment, the County must have had the ability to "at any time recede without involving any financial liability in so receding." *State Office Bldg. Comm'n v. Trujillo*, 120 P.2d 434, 446 (N.M. 1941). Here, it was never feasible for the County to "recede" from the agreement without incurring substantial financial liability. This makes the contracts invalid under the principles underlying *Montano*.

The New Mexico Supreme Court has emphasized that "an obligation is no less a 'debt' merely because it is contingent upon the future provision of services." *Hamilton*, 704 P.2d at 1105. Mr. Borde's and Mr. Bostick's employment contracts fall within New Mexico's "intended broad interpretation of indebtedness." *Montano*, 766 P.2d at 1330. As debt, their multiyear employment agreements plainly fail to satisfy any of the specifically enumerated debt-creation purposes outlined in article IX, section 10 of the state constitution. And the contracts surely never met with the approval of the County's voters. Finally, the contracts represent a future economic commitment that the County was not at liberty to create. Applying New Mexico law, we conclude the employment contracts violate article IX, section 10 of the New Mexico state constitution.[7] As such,

---

[7] The parties also ask us to consider whether the employment contracts violate (1) a provision of New Mexico law known as the Bateman Act, N.M. Stat. Ann § 6-6-11, and (2) a common-law rule prohibiting local governing bodies from binding their successors in office. Having determined the employment contracts are unconstitutional under New Mexico law, we do not need to reach these other issues. We also caution that today's order and judgment should not be interpreted as declaring that any multiyear employment contract of a New Mexico political subdivision presumptively violates the debt provisions of the New Mexico state constitution. That question is not before us. We

the contracts are "null and void." *Shoup Voting Mach. Corp. v. Bd. of Comm'rs*, 256 P.2d 1068, 1071 (N.M. 1953) (holding a county's ten-year contract for voting machines void for "incurring an indebtedness which is forbidden by the Constitution"). The district court did not err in granting judgment on the pleadings to the County on the breach-of-contract claim.

**B.**

The County had no constitutional authority to enter into the employment contracts with Mr. Borde and Mr. Bostick in these circumstances, and those contracts were void *ab initio*. It is black-letter law that a void contract "is not a contract at all" and "is void of legal effect." Restatement (Second) of Contracts § 7 cmt. a (1981). Under New Mexico law, "damages are unavailable as relief to a party to an illegal contract." *Dacy v. Vill. of Ruidoso*, 845 P.2d 793, 798 (N.M. 1992). In their complaint, Mr. Borde and Mr. Bostick have alleged the County violated their rights to due process by acting arbitrarily in terminating the contracts and by not providing them notice and an opportunity to be heard prior to their termination. They argue the County's actions deprived them of a protected property interest in receiving severance pay under the contracts. Their argument is not well taken.

The employment contracts were made in violation of the state constitution and thus were void from the outset. This means the agreements the County made with Mr.

---

simply hold that the specific employment contracts at issue in this case cannot be reconciled with the requirements of article IX, section 10 of the state constitution.

Borde and Mr. Bostick are wholly unenforceable. Indeed, it is as if the contracts—and their expansive severance provisions—never existed at all as a matter of law. Mr. Borde and Mr. Bostick do not have a protected property interest arising from the terms of a void contract, and the district court was correct in granting the County's Rule 12(b)(6) motion to dismiss their due process claims.[8]

But Mr. Borde and Mr. Bostick also have a second line of argument. They say that, even granting that their employment contracts are void and unenforceable, they also have a right to their severance that independently arises under the Luna County Personnel Ordinance. The terms of the Personnel Ordinance apply to regular, full-time County employees. Under the Personnel Ordinance, the regular County employees may be terminated only for cause. In the event of termination, employees are entitled to grievance procedures and must also be compensated for their unused paid time off.

The nub of Mr. Borde and Mr. Bostick's argument on this score is that, in the absence of an enforceable employment contract, they instead became regular, full-time employees of the County. In this capacity, the terms of their employment were governed

---

[8] After the district court ruled the employment contracts were void, Mr. Borde and Mr. Bostick then argued that the County had violated the state's Open Meetings Act, N.M. Stat. Ann. §§ 10-15-1 to -4, when it terminated the contracts. Mr. Borde and Mr. Bostick claimed that, by failing to adhere to the Act's requirements, the County's termination was not a valid action, and thus the contracts remained in force until the district court declared them void some two years later. This argument misses the mark. The contracts were void from the moment of their inception, not from the time of the judicial decree affirming the contracts were made in violation of the state constitution. Because it is not relevant to our holding in this case, we need not make any determination about whether the County complied with the Open Meetings Act.

by the Personnel Ordinance. Thus, they could be terminated only for cause, after notice and a hearing. These procedural protections, in turn, gave rise to a protected interest in their employment and its concomitant benefits. In line with this new argument, Mr. Borde and Mr. Bostick sought to amend their complaint by adding both a § 1983 claim and a state-law implied-contract claim arising under the Personnel Ordinance.[9] The district court rejected their arguments and denied them leave to amend on the grounds of futility. Again, we agree with the district court's rationale.

New Mexico is an "employment-at-will" state: "The general rule in New Mexico is that an employment contract is for an indefinite period and is terminable at the will of either party . . . ." *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 779 (N.M. 1993). Significantly, "[a]n at-will employment relationship can be terminated by either party at any time for any reason or no reason, without liability." *Id.* Mr. Borde and Mr. Bostick insist that, if they were not working for the County under the unconstitutional employment contracts, then they must have instead been working as for-cause employees subject to the protections of the Personnel Ordinance. This argument ignores the general, default rule of at-will employment in New Mexico. Mr. Borde and Mr. Bostick have not cited any authority—and we have not located any—supporting the proposition that, once an employment contract is held void, the erstwhile employee's status is somehow

---

[9] In their proposed amended complaint, Mr. Borde and Mr. Bostick newly allege that they have a liberty interest in their professional reputations based on the Personnel Ordinance. This claim is legally indistinguishable from their previous arguments on due process and thus fails for the same reasons.

transmuted into that of a for-cause employee entitled to a full range of procedural protections.

Our caselaw leads us to the contrary conclusion. In previous cases involving a void employment contract in an employment-at-will state, we have held that the terminated employee simply became an employee at will. *See Alderfer v. Bd. of Trs. of Edwards Cnty. Hosp. & Healthcare Ctr.*, 261 F. App'x 147, 152-53 (10th Cir. 2008) ("Because no valid fixed-term employment contract existed, no breach of contract occurred. Moreover, in the absence of a fixed-term employment contract, [the plaintiff] was an at-will employee.") (applying Kansas law); *Figuly v. City of Douglas*, 76 F.3d 1137, 1142 (10th Cir. 1996) ("Since the contract was voidable and was in fact declared to be void by the new city council, plaintiff became an employee at will. . . . Under this circumstance, the court properly found that he had no protected property interest in continued employment.") (applying Wyoming law). Ultimately, "[t]he absence of a protected property interest compels the conclusion that the procedural due process safeguards are inapplicable." *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1136 (10th Cir. 1994).

Lacking an enforceable employment contract, Mr. Borde and Mr. Bostick became at-will employees, with no protected property interest in their employment or its attendant benefits. The district court properly granted the County's motion to dismiss for failure to state a claim upon which relief can be granted. Further, the district court did

not abuse its discretion in denying Mr. Borde and Mr. Bostick leave to amend their complaint. The proposed amendments would have been futile.

Finally, we note that today's order and judgment should not be read as endorsing the business dealings of the County. And we understand that the result for Mr. Borde and Mr. Bostick might appear harsh. But, in this case, the paramount interest to be protected is that of the County's taxpayers, as commanded by the New Mexico state constitution. Following New Mexico law, the decisions of this circuit, and other persuasive authority, we conclude that Mr. Borde and Mr. Bostick had neither a valid employment contract nor a protected property interest in their severance benefits.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court in all respects.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge