450 P.2d 934

**TRANSAMERICA LEASING CORPORA-
TION, a California corporation,
Appellant,**

v.

**BUREAU OF REVENUE, State of New Mex-
ico and F. A. Vigil, Commissioner
of Revenue, Appellees.**

No. 242.

Court of Appeals of New Mexico.

Feb. 7, 1969.

Charles D. Olmsted, Stephenson, Campbell & Olmsted, Santa Fe, for appellant.

Boston E. Witt, Atty. Gen., Gary O'Dowd, Asst. Atty. Gen., Santa Fe, for appellees.

## OPINION

WOOD, Judge.

The Bureau (Bureau of Revenue) assessed a compensating tax under Laws 1963, ch. 324, § 1 (an amendment to § 72–17–3, N.M.S.A.1953 (Repl.Vol. 10, pt. 2)), and a sales tax (emergency school tax) under Laws 1963, ch. 325, § 3 (an amendment to § 72–16–4.5, N.M.S.A.1953 (Repl. Vol. 10, pt. 2)). Both laws were repealed by Laws 1966, ch. 47, § 22. Transamerica (Transamerica Leasing Corporation) protested the assessment. The Commissioner (Commissioner of Revenue) denied the protest. Transamerica has appealed directly to this court contending the Commissioner's order is not in accordance with law. The issue is whether Transamerica is liable for the taxes assessed. Before deciding this question, we answer the attack made on our jurisdiction.

*Jurisdiction of this court.*

■ All of the proceedings in this matter—the audit, the assessment, the protest, the hearing, the findings of fact and conclusions of law and the Commissioner's orders—were in 1967 and 1968. The proceedings were under the Tax Administration Act, §§ 72–13–13 to 72–13–92, N.M. S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1967) which went into effect January 1, 1966. Laws 1965, ch. 248, § 78. The Act has a

savings clause. Laws 1965, ch. 248, § 79. It reads:

"The Tax Administration Act does not apply to taxes the liability for payment of which was incurred prior to its effective date, or to any act done prior thereto. The payment, collection or enforcement of such taxes is to be accomplished according to the provisions of appropriate statutes previously in force and in every manner as though the Tax Administration Act had not been enacted."

The compensating tax assessed against Transamerica is based on events which occurred prior to the effective date of the Act. The sales tax assessed against Transamerica is based on events which occurred both prior and subsequent to the effective date of the Act.

Because of the savings clause, the Bureau contends that court review of tax assessments based on events prior to January 1, 1966 is limited to the review procedure which existed prior to that date. In making this contention, the Bureau disregards the date the assessment was made. As applied to this case, the Bureau's contention would require proceedings under § 72–17–16, N.M.S.A.1953 (Repl.Vol. 10, pt. 2) for all of the compensating tax assessment and under § 72–16–31, N.M.S.A. 1953, (Repl.Vol. 10, pt. 2) for a portion of the sales tax assessment. Such proceedings would be in the District Court and not in this court. Thus, the jurisdictional question challenges our power to decide the liability of the taxpayer for the compensating tax and a portion of the sales tax; no challenge is made to our jurisdiction to determine liability for sales tax based on events subsequent to January 1, 1966.

The Bureau overlooks another provision of the Tax Administration Act. Laws 1965, ch. 248, § 24, as originally enacted, provided for appeals to the District Court from orders of the Commissioner. This section was amended in 1966 and now provides that the appeal is to this court.

Section 72–13–36, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1967).

Section 72–13–36, supra, does much more than identify the court to which an appeal may be taken. It states:

"No court of this state has jurisdiction to entertain any proceeding by a taxpayer in which he calls into question his liability for any tax or the application to him of any provision of the Tax Administration Act [72–13–13 to 72–13–92], except as a consequence of the appeal by him to the court of appeals from the action and order of the commission, * * *."

We do not consider whether § 72–13–36, supra, being a later act as a result of the 1966 amendment, controls the savings clause. We do not do so because the two sections are not in conflict. The savings clause pertains to situations where liability for the tax has been established prior to January 1, 1966. Here, liability for the tax is the issue. Where the question is whether tax liability has been incurred, the savings clause is not applicable.

Section 72–13–36, supra, provides that the question of tax liability may be appealed to this court from the action and order of the Commissioner. Section 72–13–39, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1967), authorizes this court to review the orders of the Commissioner. See Union County Feedlot, Inc., v. Vigil, (Ct. App.), 79 N.M. 684, 448 P.2d 485, decided November 27, 1968; compare Board of Education v. State Board of Education, 79 N. M. 332, 443 P.2d 502 (Ct.App.1968).

*Liability for the taxes.*

Transamerica and Constructors (Colorado Constructors Inc.) entered into a "master lease" under which equipment, to be selected in the future, was to be leased from Transamerica by Constructors. Transamerica then extended a lease line of credit to Constructors. Constructors selected the items of equipment involved in this case. The equipment was shipped to Constructors for its use in New Mexico. Transamerica paid for the equipment, and

in accordance with the "master lease", took title to the equipment. A lease schedule was then entered as provided in the "master lease". The schedule provided for thirty-six monthly payments by Constructors to Transamerica.

■ The Bureau assessed a compensating tax against Transamerica on the basis of § 72–17–3, supra, but at the 3% rate provided by the 1963 amendment to that section. A basic issue is the propriety of any compensating tax assessment. If the compensating tax is applicable, Transamerica contends that the wrong rate was applied. Transamerica is correct. The Bureau concedes that the equipment was not subject to registration under the provisions of § 64–3–2, N.M.S.A.1953 (Repl. Vol. 9, pt. 1, 1960). As amended in 1963, § 72–17–3, supra, states that:

> " * * * the tax on the storage, use or other consumption in this state of * * * vehicles of a type not required to be registered under the provisions of Section 64–3–2 New Mexico Statutes Annotated, 1953 Compilation shall be at the rate of one and one-half percent of the sales price of such tractor or vehicle; * * *."

Thus, if the compensating tax is applicable, the tax rate is 1½%. Under the facts of this case, if this tax is applicable, it is applicable because Transamerica purchased the equipment and used it in New Mexico. See § 72–17–3, supra.

■ If Transamerica did purchase the property, and if the lease agreements do constitute a lease, there was a "use" within the meaning of the compensating tax law. Section 72–17–2, N.M.S.A. 1953 (Repl.Vol. 10, pt. 2 [repealed by Laws 1966, ch. 47, § 22]), defines "use" to include " * * * the exercise of any right or power over, tangible personal property incident to the ownership of that property * * *". Leasing tangible personal property is the exercise of an incident of ownership over the leased property. See Philco Corporation v. Department of Revenue, 40 Ill.2d 312, 239 N.E.2d 805 (1968); Union Oil Co.

of Cal. v. State Board of Equalization, 60 Cal.2d 441, 34 Cal.Rptr. 872, 386 P.2d 496 (1963). The questions are whether Transamerica purchased the equipment and whether the agreements between it and Constructors constitute a lease.

The Bureau assessed a sales tax against Transamerica on the basis of § 72–16–4.5, supra, as amended in 1963. Under the amendment the tax rate is 3% of the gross receipts from sales therein specified. These sales include " * * * receipts from rentals or leasing of tangible personal property * * *". The Bureau asserts that payments to Transamerica under the lease schedule are receipts from leasing tangible personal property and that these receipts are taxable at the 3% rate. The applicability of § 72–16–4.5, supra, depends on whether Transamerica has either sold or leased the equipment to Constructors.

A basic issue is the propriety of any sales tax on the transactions here involved. However, if the sales tax law is applicable, Transamerica claims the transaction between it and Constructors amounted to a sale of vehicles not subject to registration and should be taxed at the 1½% rate provided for such sales. See § 72–16–4.5, supra. Because of our decision on the basic issue, we do not reach this contention.

Both taxes were assessed on the basis that the agreements constituted a lease between Transamerica and Constructors. But was there a lease? Neither of the tax statutes define lease. Accordingly, we look to the general law in determining whether the agreements were a lease.

■ Generally speaking, a lease is an agreement under which the owner gives up the possession and use of his property for a valuable consideration and for a definite term. At the end of the term the owner has the absolute right to retake, control and use the property. See Johnson Oil Refining Co. v. Indian Refining Co., 94 Ind.App. 416, 179 N.E. 179 (1932).

■ Under general law, the character of the instrument is not to be determined by its form, but from the intention of the

parties as shown by the contents of the instrument. Hervey v. R.I. Locomotive Works, 93 U.S. 664, 23 L.Ed. 1003 (1876); Kolb v. Golden Rule Baking Co., 222 Mo. App. 1068, 9 S.W.2d 840 (1928). Thus, instruments which purport to be leases have been determined to be conditional sales contracts. Kolb v. Golden Rule Baking Co., supra; Kidder v. Wittler-Corbin Machinery Co., 38 Wash. 179, 80 P. 301 (1905); Pringle v. Canfield, 19 S.D. 506, 104 N.W. 223 (1905); see Redewill v. Gillen, 4 N.M. (Gild.) 72, 4 N.M. (John.) 78, 12 P. 872 (1887). In sales and use tax cases, the lease has been determined to be a sale. See Annot., 100 A.L.R.2d 1112 (1965) and Annot., 100 A.L.R.2d 1128 (1965). In some situations the question is whether the agreement is a lease or a security agreement. See In re Metropolitan Offset Printers, Inc., 391 F.2d 770 (3rd Cir.1968); Sanders v. National Acceptance Company of America, 383 F.2d 606 (5th Cir. 1967); In re Atlanta Times, Inc., 259 F.Supp. 820 (N.D. Ga. 1966).

We must, therefore, determine the intention of Transamerica and Constructors in entering the agreements. The intention in this case is determined by facts to which the parties stipulated, and upon which the Commissioner based his orders denying the protest.

The facts are:

The master lease places the responsibility for selecting, ordering, delivery, operation, maintenance and use of the equipment upon Constructors. Any liability resulting from these items is upon Constructors; it is to indemnify and hold Transamerica harmless in connection with these items. Constructors is responsible for insurance coverage which protects Transamerica. The lease schedule requires Constructors to carry fire, theft and comprehensive insurance " * * * protecting Lessor's [Transamerica's] interest as it may appear * * *".

Constructors cannot terminate the agreement except by paying to Transamerica all of the payments provided for in the lease schedule. Neither loss nor damage to the equipment impairs Constructor's obligation to make these payments. If Constructors defaults on the payments, Transamerica may take possession of the equipment but such does not terminate Constructor's obligation unless Transamerica expressly agrees to such termination. Transamerica has other remedies in event of default, but all provide that Transamerica is to collect the full amount of the scheduled payments plus additional costs and expenses to Transamerica resulting from the default. If, in pursuing any of these default remedies, Transamerica collects only a part of the payments unpaid at time of default, Constructors remains liable for the balance.

The amount of the payments under the lease schedule was determined by the cost of the equipment plus interest on that cost.

Although Transamerica paid for the equipment, it did so "With funds allocable to the * * * line of credit * * *" it had extended to Constructors.

Transamerica did not carry the equipment on its books as an asset. It treated the total amount of the scheduled payments as a receivable. The difference between the cost of the equipment and the total of the scheduled payments (the interest) was carried on Transamerica's books as unearned income; monthly transfers were made from unearned income to income over the term of the lease schedule.

Constructors carried the equipment on its books as an asset, and depreciated the equipment in its federal tax returns.

Although title to the equipment was held by Transamerica, upon all of the payments being made, Constructors could acquire the title by paying $1.00 to Transamerica. The original cost of the equipment exceeded $235,000.00.

General definitions of a security interest under the Uniform Commercial Code are stated in § 50A–1–201(37), N.M.S.A.1953 (Repl.Vol. 8, pt. 1). A security interest is " * * * an interest in personal property or fixtures which secures payment or performance of an obligation. * * *"

This section states: "* * * Whether a lease is intended as security is to be determined by the facts of each case; * *". The stipulated facts show an intent to secure the payment of the cost of the equipment plus interest on that cost and an intent to secure that payment to Transamerica by it holding an interest in the equipment. As between Transamerica and Constructors, the lease was intended as security.

That the lease was intended as a security interest is shown by another provision of § 50A–1–201(37), supra, which reads:

"* * * (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

Upon completing the scheduled payments, Constructors had the option to acquire title to the equipment by paying the nominal consideration of $1.00.

Neither the compensating tax assessment nor the sales tax assessment can be sustained on the basis that Transamerica leased the equipment to Constructors. Transamerica had a security interest.

Is the compensating tax assessment otherwise sustainable? Since a security interest is defined to include an interest in personal property, Transamerica's security interest is an interest in the equipment. Having previously given value for this interest, Transamerica acquired this interest (the security interest attached) by the agreement which is the lease schedule. See § 50A–9–204, N.M.S.A.1953 (Repl. Vol. 8, pt. 1). We assume, but do not decide, that execution of the agreement by which the interest was acquired is a "use" within the meaning of the compensating tax law. See § 72–17–2, supra.

Under § 72–17–3, supra, the compensating tax is imposed on tangible personal property purchased from a retailer; liability for the tax is upon a person so purchasing for use in New Mexico. Section 72–17–2, supra, defines "purchase" to include a transfer of tangible personal property for a consideration. Transamerica did not purchase the property under this definition. Constructors selected and ordered the equipment. While Transamerica paid for it, it did so out of credit which had been previously allocated to Constructors.

The consideration for the purchase came from Constructors; it was the purchaser. It would be liable for the compensating tax. The transactions with the vendors of the equipment were not intended as a security transaction (see § 50A–2–102, N.M.S.A.1953 (Repl.Vol. 8, pt. 1)), but as a purchase from the vendors. In these transactions, Transamerica's role was that of a financing agent. See § 50A–2–104(2), N.M.S.A.1953 (Repl.Vol. 8, pt. 1). Transamerica is not liable for the compensating tax assessment.

Is the sales tax assessment sustainable as a sale? The sales tax act does not define a sale. Section 50A–2–106(1), N.M.S.A.1953 (Repl.Vol. 8, pt. 1) defines a sale as "* * * the passing of title from the seller to the buyer for a price * * *". While Constructors was the buyer of the goods, Transamerica was not the seller. The sellers were the vendors from whom Constructors purchased the equipment. Transamerica's role in those transactions was that of financing agent. Trans-America's transaction with Constructors was a loan of money at interest. The repayment of the money is secured by the security agreement. Transamerica is not liable for the sales tax assessment.

The Commissioner's orders overruling Transamerica's protest were not in accordance with law. The orders are reversed. The cause is remanded to the Commissioner with instructions to set the orders aside and enter a new order sustaining Transamerica's protest to the compensating tax assessment and to the sales tax assessment.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.