**Sonja DIKSEN, individually and as legal guardian of Sharmon Sutor, Katrina Sutor and Troy Sutor, Appellant,**

v.

**Nick TROXELL, Appellee.**

No. S–6538.

Supreme Court of Alaska.

May 9, 1997.

Arthur S. Robinson, Robinson, Beiswenger & Ehrhardt, Soldotna, for Appellant.

Mark Rindner, Glen E.M. Yaguchi, Lane Powell Spears Lubersky, Anchorage, for Appellee.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and SHORTELL, J. Pro Tem.*

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

A transferor of a limited entry permit may not retain a property interest in the permit. Diksen sued Troxell for money owed under an oral transfer agreement. Troxell obtained summary judgment on the ground that the agreement was a lease and thus illegal. A lease must have a retransfer term. Because there is a fact issue as to whether the agreement contained a term under which Troxell would retransfer the permit, we reverse.

## II. FACTS AND PROCEEDINGS

Sonja Diksen is the mother of four children, Corinna, Sharmon, Troy, and Katrina. Prior to 1988, Diksen was married to John Boggs, who is the father of two children, John Ed and Mary. In 1978 Diksen and Boggs decided to invest the savings of their children in a Kodiak purse seine limited entry permit. Around the same time, Boggs purchased a fishing boat, the Sally J, in partnership with Nick Troxell. In February 1979 Diksen purchased a permit for $80,000, using the children's $30,000 savings and $50,000 she and Boggs loaned the children.[1] Diksen registered the permit in her own name.

In June 1980 Diksen transferred the permit to Troxell who promised orally to pay the children ten percent of the gross revenues earned from fishing the permit. For the eight years from 1980 to 1987, Troxell made yearly payments to Diksen. She distributed the money to the children according to the percentage each had contributed to the original investment.

Boggs and Diksen separated in 1986 and divorced in 1988. In August 1986 Diksen purchased her daughter Corinna's interest in the permit agreement. In June 1988 she purchased her daughter Katrina's interest.

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. The loan was repaid by the children.

In 1988 Troxell bought John Ed's and Mary's interests in the permit agreement. Troxell offered to buy Diksen's and her children's interests on the same terms, but no agreement was reached. Troxell did not make any payments to Diksen or her children for the 1988 fishing season and has not made payments since then.

In 1993 Diksen sued Troxell, alleging that his failure to pay her and her children their fraction of ten percent of the gross revenues constituted a breach of their contract; she also claimed Troxell would be unjustly enriched if he was not required to pay for the permit. Diksen sought only monetary damages, not possession of the permit.

Troxell moved for summary judgment. His motion was granted without opinion. Diksen appeals.

## III. DISCUSSION

█ Limited entry permits are transferable through the Commercial Fisheries Entry Commission. AS 16.43.170. However, with exceptions not here relevant, entry permits cannot be pledged, mortgaged or leased. The transferor may not retain a right to regain, or control the disposition of, a transferred permit. Alaska Statute 16.43.150(g) provides in relevant part:

> Except as provided in [exceptions not here relevant] an entry permit may not be
>
> (1) pledged, mortgaged, leased, or encumbered in any way;
>
> (2) transferred with any retained right of repossession or foreclosure, or on any condition requiring a subsequent transfer; or
>
> (3) attached, distrained, or sold on execution of judgment or under any other process or order of any court....

In his motion for summary judgment, Troxell advanced two arguments relevant to AS 16.43.150(g). First, noting that Diksen had executed an affidavit in connection with the transfer of the permit which affirmed that the permit was not encumbered, he contended that she should be bound by the representations made in the affidavit. Therefore, "her claims of an ownership interest in the permit, and to income derived therefrom, must fail as a matter of law...."[2]

Second, Troxell argued that the transaction was a lease; as such it was illegal and therefore wholly unenforceable. In support of his characterization of the transaction as a lease he cited a letter from Diksen dated February 9, 1989, in which she referred to the transaction as a lease.

In opposition to the motion, Diksen argued that there were genuine issues of material fact as to whether the oral agreement transferring the permit contained a promise by Troxell to retransfer the permit to Diksen.[3] Diksen characterized the transaction as a sale in which the consideration was the agreement to pay ten percent of the gross revenues obtained from fishing the permit. In an affidavit filed with the memorandum in opposition to the motion she described the transaction as follows:

> The original intent of the oral contract between Troxell, Boggs Enterprises, and myself representing the children, was for the children to be able to make money off their investment and contribution of the money to buy the permit for the fishing venture. Troxell was to derive income from the venture as half owner of the Sally J. My ex-husband, Boggs, would derive income from the 50% ownership of Boggs Enterprise in the Sally J and the children would derive income from their $80,000.00 payment for the cost of the permit. Troxell was always to keep the permit and use it in the venture. The venture was to last indefinitely so long as the Sally J and the permit were used to catch and sell fish.

On appeal, Diksen generally repeats the arguments she made in opposition to the motion for summary judgment. Troxell again makes the argument that the agree-

---

**2.** The permit transfer affidavit stated as follows:

I swear, under penalty of perjury, that the information supplied by me on this form is true, that this transfer is not requested as part of, nor in anticipation of, any lease, pledge, mortgage or other encumbrance involving the permit listed above....

**3.** Summary judgment may not be granted where there are genuine issues of material fact. Alaska R. Civ. P. 56

ment was a lease. He also contends that Diksen lacks standing to sue for her children as they are now adults and the real parties in interest.

■ Troxell does not argue, as he did before the superior court, that the consideration for the transfer of a permit may not include a contractual obligation on the part of the transferee to pay a share of the proceeds earned by the transferee in using the permit. We are aware of no reason why such an obligation would not be legal when it is not secured by a retained interest in the permit. This ground, then, can not be used to support the award of summary judgment.

■ Troxell's real party in interest argument also does not support the summary judgment. Alaska Civil Rule 17(a) permits "a party with whom or in whose name a contract has been made for the benefit of another" to "sue in his own name without joining with him the party for whose benefit the action is brought." Diksen is suing on such a contract. Further, before an action can be dismissed because it is not prosecuted in the name of the real party in interest there must be an order which identifies the real parties in interest; and they must be given an opportunity to ratify the action or join it within a reasonable time. Civil Rule 17(a); *KOS v. Williams,* 616 P.2d 868, 870 (Alaska 1980). There was no such order in this case. Moreover, Diksen is clearly the real party in interest with respect to the interests in the permit agreement which she purchased from her children.

■ The important characteristic of a lease for purposes of AS 16.43.150 is that a transferor/lessor has the right to regain possession of the leased property—here the permit—at the end of the lease term. There must, in other words, be an express or implied promise by the transferee to retransfer the permit to the transferor. *Transamerica Leasing Corp. v. Bureau of Revenue,* 80 N.M. 48, 450 P.2d 934, 937 (App.1969); *In re*

*Peacock,* 6 B.R. 922, 925 (Bankr.N.D.Tex. 1980).[4]

■ Diksen's characterization of the transaction as one involving a lease in her letter of February 9, 1989, is evidence that the transaction was a lease. There is also other evidence of a retransfer agreement. In her deposition Diksen testified that there was an understanding that in the event Troxell did not desire to fish the permit any longer "it would go back into my name."

In support of the argument that the transaction was not a lease—that there was no agreement that Troxell would retransfer the permit—is Diksen's affidavit filed in opposition to the motion for summary judgment, quoted above. In addition, Troxell, in his deposition, denied that Diksen had a retained interest in the permit of any sort:

Q: Was there ever an understanding between you and John or Sonja that if the permit wasn't used that it would go back in Sonja's name?

A: No. I don't believe that there was ever any kind of an agreement like that.

Likewise, Boggs gave similar testimony:

Q: So my question is at the time or just prior to the time or any time prior to the permit being transferred to Nick, was there any agreement with anybody, you, Sonja, Nick, Boggs Enterprises, Nick, anybody, that Nick would sometime transfer that permit back to Sonja, or one of the kids or anything like that?

A: Not that I remember.

. . . .

Q: At the time that the permit was transferred from Sonja to Nick Troxell, was there ever any intent that this permit would ever come back to Sonja?

A: No. Absolutely not.

The foregoing conflicting evidence suffices to raise a genuine issue of material fact as to

4. "At common law a lease of personal property is a bailment for hire." Official comment to § 2A-103j; Uniform Commercial Code, codified as AS 45.12.103(10). "A relationship of bailor-bailee arises when the owner, while retaining general title, delivers personal property to another for some particular purpose upon an express or implied contract to redeliver the goods . . . ." *Bruton v. Automatic Welding & Supply Corp.,* 513 P.2d 1122, 1126 (Alaska 1973) (quoting *Maulding v. United States,* 257 F.2d 56, 60 (9th Cir.1958)).

whether the oral agreement between Troxell and Diksen contained an express or implied promise by Troxell to reconvey the permit to Diksen. Thus the trial court erred in granting Troxell's motion for summary judgment.

## IV. CONCLUSION

In this case both parties made evidentiary admissions which conflict with their respective legal positions. These admissions, and other evidence, create a genuine issue of material fact as to whether the transfer agreement contained an illegal term. The superior court erred in granting summary judgment. The judgment in this case is therefore reversed and this case is remanded for further proceedings in which the nature and terms of the parties' agreement should be determined. If the agreement is found to contain an illegal term, the agreement either wholly or in part should not be enforced.[5] Otherwise, judgment consistent with the agreement should be entered.

REVERSED and REMANDED.

---

5. The parties have not briefed the question of total or partial nonenforcement in case of illegality. This failure, however, does not preclude consideration of this question on remand. The considerations governing this question are set forth in the Restatement (Second) of Contracts, §§ 178 and 183 (1981).