BOHNHOFF, Judge.
{1} Plaintiff Jose M. Hernandez, an employee of Creed, Inc. (Creed), injured himself while exiting a commercial truck that Creed had leased from Defendant Grando's, LLC (Grando's). After Hernandez brought suit against Grando's based on theories of negligence, strict product liability, and breach of implied warranty, the district court granted summary judgment in favor of Grando's and *1261 dismissed Hernandez's complaint. On appeal, Hernandez argues that the district court erred in granting summary judgment on his negligence claim because (1) Grando's is bound by its admission in its answer to Hernandez's original complaint that it was a motor carrier and owed him a duty to maintain and repair the leased truck; (2) alternatively, Grando's is a motor carrier under federal and state law and therefore owed duties imposed on motor carriers by those laws; and (3) even assuming Grando's is not a motor carrier, as a lessor it still owed Hernandez a common law duty of care. Hernandez also argues that, because Grando's principal was aware of the condition of the truck at all times, the company is strictly liable for the defect. We reverse on the basis of Hernandez's third negligence argument. However, because the first and second negligence arguments and the strict liability argument would be likely to arise again on remand, we affirm as to them in the interest of judicial efficiency. See Medina v. Hunemuller Constr., Inc. , 2005-NMCA-123, ¶ 16, 138 N.M. 472, 122 P.3d 839, overruled on other grounds by Hidalgo v. Ribble Contracting , 2008-NMSC-028, ¶ 22, 144 N.M. 117, 184 P.3d 429 ; Sena v. N.M. State Police , 1995-NMCA-003, ¶ 25, 119 N.M. 471, 892 P.2d 604.
BACKGROUND
{2} Hernandez worked for Creed in Loving, New Mexico, as a truck driver. On June 21, 2013, while at work, Hernandez attempted to exit from a Creed truck. The truck's sidestep had been kept in place with a wire and collapsed when Hernandez stepped on it. Hernandez sustained injuries to his knee and back from the fall. At the time of the incident, the truck was leased from Grando's to Creed pursuant to a written agreement. Adan "Sonny" Grandos (Grandos) was the sole and managing member of Grando's as well as the president of Creed, and signed the lease as both lessor and lessee.
{3} Hernandez received workers' compensation benefits for his injuries. Hernandez subsequently filed a complaint in district court against Grando's alleging strict liability, negligence, and breach of warranty. In its answer, Grando's admitted the following allegations of the complaint: (1) "[Grando's] had a duty to comply with all statutory and regulatory provisions that pertain or apply to trucks to be used in interstate commerce"; (2) "[Grando's] owed a duty to all persons who used their [sic] trucks to inspect, repair, and maintain their [sic] trucks in a safe condition so that persons who used its trucks would not be injured"; (3) "[Grando's] as a provider of trucks to be used in intrastate and/or interstate commerce, was required to abide by state and/or federal laws, statutes, regulations, and safety codes, including Part 396 of the Federal Motor Carrier Safety Act, concerning systematic inspection, repair, and maintenance of its trucks by a qualified inspector." One month later, Grando's retained new counsel.
{4} Grando's moved for summary judgment, arguing that (1) Grando's did not owe Hernandez any common law or statutory duty to maintain or repair the truck because it is not a motor carrier, did not employ Hernandez, and delegated all duties concerning the truck to Creed; (2) Hernandez could not establish a strict products liability claim because there was no evidence that the truck was defective at the time Grando's leased it to Creed; and (3) Hernandez could not establish a breach of implied warranty claim because Grando's disclaimed all implied warranties. In his response to Grando's motion Hernandez argued (1) Grando's was bound by its admissions in its answer; (2) Grando's had knowledge of the defective step and did not repair it; (3) Grando's is a motor carrier and subject to the statutory and regulatory duties of a motor carrier; and (4) Grandos's affidavit submitted in support of Grando's motion was not enough evidence to disprove strict liability. In its reply Grando's further argued that (1) it is irrelevant whether Grandos had knowledge of the broken step because the duty to repair fell exclusively on Creed; and (2) Grando's answer was filed by its previous attorney, the admissions in question were erroneous, and Grando's would seek leave to amend its answer and correct the erroneous admissions.
{5} Following the filing of Hernandez's summary judgment response, Grando's moved to amend its answer and rescind the previous admissions. The district court never *1262 ruled on that motion and instead granted Grando's motion for summary judgment and dismissed the case.[1]
DISCUSSION
{6} Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. After the moving party makes a prima facie showing that he or she is entitled to summary judgment, the party opposing the motion has the burden to show "by affidavit or other admissible evidence that there is a genuine issue of material fact." Associated Home & RV Sales, Inc. v. Bank of Belen , 2013-NMCA-018, ¶ 29, 294 P.3d 1276 (internal quotation marks and citation omitted). "An issue of fact is 'genuine' if the evidence before the court considering a motion for summary judgment would allow a hypothetical fair-minded fact[-]finder to return a verdict favorable to the non-movant on that particular issue of fact." Id. ¶ 23 (internal quotation marks and citation omitted). Courts reviewing a motion for summary judgment must review the facts and make all reasonable inferences in the light most favorable to the non-moving party. Phx. Funding, LLC v. Aurora Loan Servs., LLC , 2017-NMSC-010, ¶ 17, 390 P.3d 174. "Our review is conducted in light of our traditional disfavor of summary judgment and our preference for trials on the merits." Madrid v. Brinker Rest. Corp. , 2016-NMSC-003, ¶ 16, 363 P.3d 1197.
{7} "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." City of Albuquerque v. BPLW Architects & Eng'rs, Inc. , 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "We review questions of statutory interpretation de novo." Cobb v. State Canvassing Bd. , 2006-NMSC-034, ¶ 33, 140 N.M. 77, 140 P.3d 498 (internal quotation marks and citation omitted). "Whether a duty exists is a question of law for the courts to decide." Herrera v. Quality Pontiac , 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted).
A. Grando's Admissions of Hernandez's Conclusions of Law in His Complaint Were Not Material to the District Court's Summary Judgment Analysis
{8} Hernandez argues that the district court erred in granting summary judgment because Grando's admitted in its answer to Hernandez's complaint that it was a motor carrier and owed him duties to maintain its trucks in safe condition. Hernandez maintains that Grando's should be bound by its answer.
{9} Under New Mexico law, parties are not bound by conclusions of law set forth in their pleadings. "[Summary judgment] shall be rendered ... if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C). "[I]n ruling on a motion for summary judgment, a court is not wed to a party's assertion of conclusions of law whether in a petition, complaint, or motion for summary judgment, even if the conclusions are admitted by the opposing party." Vives v. Verzino , 2009-NMCA-083, ¶ 10, 146 N.M. 673, 213 P.3d 823 ; see also *1263 GCM, Inc. v. Ky. Cent. Life Ins. Co. , 1997-NMSC-052, ¶ 13, 124 N.M. 186, 947 P.2d 143 (holding that, when a party admits for purposes of summary judgment the veracity of the allegations in the complaint, the appellate courts "will accept the facts as alleged ... for purposes of this motion and determine whether, as a matter of law, [the defendant] is entitled to judgment").
{10} Grando's admissions in its answer upon which Hernandez predicated his argument concerned its legal duties, i.e., were conclusions of law.[2] Under Rule 1-056(C), the district court was not obligated to accept them and, on the contrary, had an obligation independently to determine the accuracy of Hernandez's assertions of duty on the part of Grando's. Therefore, Grando's admissions as to its duty in its answer were not material to the district court's determination whether disputed issues of fact precluded summary judgment in favor of Grando's.
B. Grando's Is Not a Motor Carrier and Is Not Subject to the Federal and State Statutory and Regulatory Duties of Maintenance and Repair Imposed on Motor Carriers
{11} In an affidavit submitted in support of Grando's summary judgment motion, Grandos averred that Grando's business was limited to leasing trucks to Creed. On that basis, Grando's argued that it was not a motor carrier; further, no statute or regulation imposes on the owner of a truck, solely on the basis of such ownership, the duties of inspection, maintenance, and repair to which motor carriers are subject. Hernandez does not dispute that Grando's business was limited to leasing trucks to Creed, i.e., he does not contend that Grando's was engaged in transportation of goods or services for compensation. Instead, in his complaint, summary judgment response, and on appeal, Hernandez maintains that, as an owner of a commercial vehicle, Grando's was subject to federal and state statutory and regulatory duties that are imposed on motor carriers. In other words, Hernandez effectively equates ownership of the subject truck with motor carrier status.
1. Motor Carrier Status and Duties
{12} 49 U.S.C. § 13102(14) (2012) defines a motor carrier as "a person providing motor vehicle transportation for compensation." See also 49 C.F.R. § 390.5 (2017) (defining "motor carrier" as "a for-hire motor carrier or a private motor carrier"; "for-hire motor carrier" as "a person engaged in the transportation of goods or passengers for compensation"; and "private motor carrier" as "a person who provides transportation of property or passengers, by commercial vehicle, and is not a for-hire motor carrier"). 49 U.S.C. § 31136(a)(1) (2012) directs the Secretary of Transportation to prescribe commercial motor vehicle safety regulations that will ensure, at a minimum, that "commercial motor vehicles are maintained, equipped, loaded, and operated safely." 49 C.F.R. § 396.3(a) (2017) in turn provides that "[e]very motor carrier and intermodal equipment provider must systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles and intermodal equipment subject to its control." See also 49 U.S.C. § 31502(b)(1) (2012) (authorizing Secretary of Transportation to prescribe requirements for safety of equipment of a motor carrier); 49 C.F.R. §§ 399.201, .211 (2017) (implementing § 31502(b)(1) and requiring adequate maintenance of all steps on commercial motor vehicles to enhance the safety of motor carrier employees). Thus, federal law requires motor carriers to repair and maintain motor vehicles that are subject to their control.
{13} The New Mexico Motor Carrier Safety Act (the Act) is set forth at NMSA 1978, Sections 65-3-1 to -14 (1989, as amended through 2009). The purpose of the Act is "to protect the New Mexico traveling public by ensuring the safe operation of commercial motor carrier vehicles on New Mexico's highways." Section 65-3-2. The Act does not define "motor carrier." However, the Motor *1264 Carrier Act, NMSA 1978, §§ 65-2A-1 to -41 (2003, as amended through 2017), defines a "motor carrier" as "a person offering or providing transportation of persons, property or household goods for hire by motor vehicle, whether in intrastate or interstate commerce[.]" Section 65-2A-3(FF). In the absence of a different definition of "motor carrier" in the Act, we will apply this definition. See United Rentals Nw., Inc. v. Yearout Mech., Inc. , 2010-NMSC-030, ¶ 22, 148 N.M. 426, 237 P.3d 728 (holding that the appellate courts will "look to other statutes in pari materia"); State v. Rivera , 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (holding that the appellate courts will consider statutory language "in reference to statutes dealing with the same general subject matter" and will attempt to "read different legislative enactments as harmonious instead of as contradicting one another" (internal quotation marks and citations omitted) ).
{14} The Act requires the adoption of "rules and regulations concerning the systematic inspection, repair and maintenance of all commercial motor carrier vehicles. The regulations shall not be inconsistent with or more stringent than applicable federal safety standards." Section 65-3-12; see also § 65-3-4(A) (directing the adoption of regulations applicable to motor carrier safety that "shall not be inconsistent with or more stringent than applicable federal safety standards"); § 65-3-9 (directing the adoption of regulations "not inconsistent with or more stringent than applicable federal safety standards" concerning various parts and accessories necessary for the safe operation of a commercial motor carrier). Regulations establishing safety requirements for motor carriers and motor vehicles operated by motor carriers are set forth in 18.3.4 NMAC. In particular, 18.3.4.12(F)(1) NMAC (02/13/2015, as amended through 01/30/2018) adopts by reference, for vehicles other than small passenger vehicles and commuter services, the inspection, repair, and maintenance requirements of 49 C.F.R. § 396.3. Thus, New Mexico also requires motor carriers to repair and maintain motor vehicles subject to their control.
{15} New Mexico courts have not addressed whether a lessor of trucks falls within the foregoing federal or state definitions of a motor carrier. However, Castro v. Budget Rent-A-Car Sys., Inc. , 154 Cal.App.4th 1162, 65 Cal.Rptr.3d 430, 437 (2007), provides guidance. There, the plaintiff sustained physical injuries in a traffic collision allegedly caused by an overturned truck. Id. at 433-34. The defendant had leased the truck to Carlos Diaz, doing business as Carlos Diaz Fresh Produce. Id. at 432. At the time of the accident, Diaz's employee was driving the leased truck. Id. The plaintiff contended that the defendant "is a federally regulated motor carrier because it is in the business of leasing to others commercial vehicles that will be used to transport goods or property across state lines, and it is compensated for that activity." Id. at 437. The court, however, reasoned that because United States Code Title 49 and its regulations do not mention "lessor" in the definitions of "motor carrier," "motor private carrier," or "for-hire" carriage, Congress and the federal Department of Transportation must not have intended to extend to lessors the requirements imposed on motor carriers. Id. at 438-39. "[T]he mere act of leasing the truck to Diaz did not qualify [the defendant] as a motor carrier because it did not retain possession or control over the truck or otherwise operate the truck to transport goods. ... [The defendant] was not a motor carrier within the meaning of the cited federal statutes and regulations." Id. at 437, 439 ; accord Del Real v. U.S. Fire Ins. Crum & Forster , 64 F.Supp.2d 958, 965 (E.D. Cal. 1998). We find the reasoning of Castro persuasive and hold that a lessor of trucks is not a motor carrier subject to the foregoing statutory and regulatory duties of inspection, maintenance, and repair.
{16} Hernandez also points to other provisions of federal and state law governing motor carriers that expressly refer to vehicle leases and contends that those statutes impose duties upon lessors. 49 U.S.C. § 14102(a) (2012) provides that "[t]he Secretary [of Transportation] may require a motor carrier ... that uses motor vehicles not owned by it to ... have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of *1265 operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier." The implementing regulation, 49 C.F.R. § 376.11(a) (2017), provides that "the authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions: (a) Lease. There shall be a written lease granting the use of the equipment and meeting the requirements contained in § 376.12." 49 C.F.R. § 376.12(c)(1), in turn, specifies that such a lease shall provide that the motor carrier shall have exclusive possession, control and use of the equipment, and assume complete responsibility for the operation of the equipment, for the duration of the lease. Similarly, Section 65-2A-24(A) provides that "[a]n intrastate motor carrier shall not lease a motor vehicle or operate a leased motor vehicle in the course of its transportation service except as provided by commission rule." 18.3.9 NMAC implements Section 65-2A-24(A). In 2013, 18.3.9.10(B) NMAC (01/01/2005), provided, "If the equipment lease is between an authorized motor carrier and a person who is not an authorized motor carrier, the equipment lease shall specify that the authorized motor carrier shall be responsible for complying with all applicable laws and ... the safety requirements prescribed in 18.3.4 NMAC, safety requirements." These statutes and regulations impose on a motor carrier lessee the obligation to enter into a written lease, pursuant to which the lessee assumes full responsibility for the safe maintenance and operation of the leased vehicle. Reasonably construed in pari materia with the statutes and regulations discussed above, they do not impose any duty on the lessor (unless the lessor is also a motor carrier), including any implied duty to maintain the vehicle during the lease term.
2. Grando's Was Not Subject to the Duties of Inspection, Maintenance, and Repair Imposed on Motor Carriers
{17} It is undisputed that Grando's business was limited to leasing trucks to Creed. As a lessor of trucks, Grando's is not a motor carrier within the plain meaning of the term's definitions set forth in the foregoing federal and New Mexico statutes and regulations. That is, Grando's does not provide transportation of persons, property, or household goods for hire or provide transportation for compensation. Further, the federal and New Mexico definitions of motor carrier neither explicitly nor implicitly reference lessors. The absence of any such reference supports the conclusion that obligations imposed on motor carriers are not meant to apply to persons who lease vehicles to motor carriers. This Court "will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written." State v. Trujillo , 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. Thus, Hernandez did not establish a disputed question of fact regarding Grando's alleged breach of any statutory or regulatory duties of a motor carrier.
C. The District Court Erred in Granting Summary Judgment in Favor of Grando's on Hernandez's Negligence Claim
{18} Hernandez argues that Grando's owed a common law duty of care to ensure that the vehicles it owns are maintained and repaired in a safe condition, and that Grando's could not escape this duty by entering into a lease agreement with Creed. Hernandez contends that Grando's breached this duty by not properly repairing the defective truck step.
1. Lessor's Divestiture of Duty to Maintain Land or a Chattel in Safe Condition
{19} The owner of land or a chattel who, as a result of a lease, transfers possession and control of the land or chattel to the lessee, generally divests itself of a duty to maintain the land or chattel in a safe condition. For example, in Grove v. Cornell University , 54 N.Y.S.3d 260, 151 A.D.3d 1813 (2017), the court held that the lessor of a boom lift from which an employee of the lessee fell and injured himself while installing windows on a building under construction did not owe the employee a duty of care. Similarly, in Austin v. Walt Disney Pictures , No. 329655, 2017 WL 694708, at *1 (Mich. Ct. App. Feb. 21, 2017) (per curiam), the plaintiff, *1266 an actress, brought an action alleging that, during filming, she was injured while performing a stunt. Go Stunts had leased the stunt equipment used for the film to Michigan Motion Picture Productions, LLC. Id. The plaintiff alleged that Go Stunts owed a duty to inspect and maintain the equipment on site. Id. The court disagreed, holding that Go Stunts did not owe a duty to inspect and maintain stunt equipment while the equipment was leased. Id. at *2.
{20} While no New Mexico decision directly addresses the question of a chattel lessor's duty, other New Mexico decisions reflect the underlying general principle that the duty of care derives from possession and control. In Gabaldon v. Erisa Mortgage Co. , ¶ 1, 1999-NMSC-039, 128 N.M. 84, 990 P.2d 197, our Supreme Court reversed this Court's opinion recognizing a negligent entrustment cause of action against a landlord for conditions on the land that the landlord does not control. The Court stated that "the legal position of a non-possessory landlord is not one of immunity or privilege[;] it is simply the same legal position offered by sellers of property. [Landlords] are simply not, as a matter of law, responsible for what takes place on land they do not possess, and do not have a right to control." Id. ¶ 30 (alteration, internal quotation marks, and citation omitted). While Gabaldon analyzes a landlord-tenant relationship, it supports the general proposition that lessors who do not have possession or control owe no duty to maintain the leased property in a safe condition to prevent injury to others. Id. ; see Gourdi v. Berkelo , 1996-NMSC-076, ¶ 15, 122 N.M. 675, 930 P.2d 812 (stating that "[t]he duty of a landowner generally to keep the premises in a safe condition arises from its position of control over the premises ... [and that w]hen ... a landowner has relinquished the right to possession under a lease, he or she is no longer in the best position to discover and remedy any dangerous condition-the tenant is").
{21} In Harmon v. Atlantic Richfield Co. , 1981-NMCA-005, ¶ 1, 95 N.M. 501, 623 P.2d 1015, the plaintiff, an employee of an independent contractor, was injured while gauging a frac tank owned by the defendant. The defendant had entered into a contract with the plaintiff's employer relieving the defendant of any job safety duty. Id. ¶¶ 2-3. The plaintiff alleged that the defendant had been negligent in failing to provide the plaintiff with a safe place to work. Id. ¶ 1. The opinion[3] concluded that the plaintiff's work was solely under the control and supervision of his employer from whom he received workers' compensation benefits. Id. ¶¶ 27, 28. The opinion further concluded that, because the contract between the defendant and the contractor divested the owner of the right to control the contractor's operations, the owner owed no duty to the contractor's employees to provide a safe place to work. Id. ¶¶ 25, 28.
{22} The July 1, 2011, Commercial Vehicle/Equipment Lease Agreement (the Agreement) between Grando's and Creed provided for delivery by Grando's of seven vehicles, including the 1995 blue Freightliner tractor from which Hernandez fell on June 21, 2013, to Creed, for a term continuing through November 1, 2013. While not explicitly stating that possession and control was transferred to Creed, the Agreement clearly provided for Creed to take possession of and responsibility for the vehicles. Further, transfer of possession and control was implicit in the term "lease." Transamerica Leasing Corp. v. Bureau of Revenue , 1969-NMCA-011, ¶ 16, 80 N.M. 48, 450 P.2d 934 (defining a "lease" as "an agreement under which the owner gives up the possession and use of his property for a valuable consideration and for a definite term"); Black's Law Dictionary 800 (5th ed. 1979) (defining a "lease" as "a contract by which one owning such property grants to another the right to possess, use and enjoy it for specified period of time in exchange for periodic payment of a stipulated price, referred to as rent").
{23} In Section 9 of the Agreement, Grando's expressly delegated to Creed the obligation to maintain and repair the tractor: "Lessor shall not be obligated to make any repairs or replacements. At Lessee's expense, shall [sic] take good care of the Vehicles, and repair or replace any and all damage *1267 done to the Vehicles. ... Thus without limitation, Lessee, at Lessee's expense, shall provide the following: ... (b) maintenance and repairs, e.g., all labor and parts that may be required to keep the Vehicles in good operating condition." Consistent with Harmon , Gabaldon , and Gourdi , this relinquishment and transfer of possession and control, and in particular, responsibility for maintenance and repair, divested Grando's of the duty to which it ordinarily would be subject as owner to inspect, repair, and maintain the trucks.
2. Grando's Reservation of a Right to Inspect the Truck
{24} Hernandez argues, however, that because under the lease Grando's retained a right to inspect the leased vehicles and prevent their use by Creed if it found that the vehicles were not being properly maintained, Grando's still owed such a duty to him. The portions of the lease on which Hernandez relies state:
8. Lessor may at all times inspect the Vehicles and observe their use. Lessee whenever requested by Lessor shall advise Lessor of the exact location of all of the Vehicles and their condition. Lessor may immediately remove any Vehicles from any job site, building or other place, without notice or liability to Lessee, if upon inspection, Lessor determines in Lessor's opinion that any of the Vehicles are being used beyond capacity or in any manner improperly cared for or abused.
9.... If Lessee fails to perform any maintenance required hereunder within five (5) days of the occurrence of the need for maintenance Lessor may at Lessor's option and without limitation perform such maintenance and Lessee shall repay the costs for such work incurred by Lessor immediately upon demand, or (b) terminate this Lease upon three (3) days prior written notice from Lessor to Lessee. Lessee shall make no alteration of any of the Vehicles without Lessor's prior written consent.
Thus, under the lease Grando's at all times retained the right to inspect a vehicle, remove it from the job site, and perform necessary maintenance that Creed failed to perform.
{25} In Gourdi , a trust had leased the subject premises to the operator of a restaurant. 1996-NMSC-076, ¶ 1, 122 N.M. 675, 930 P.2d 812. An employee of the tenant slipped on the restaurant floor and sued the trustees for her resulting injuries, alleging that their negligence in failing to maintain a drainage pipe caused liquid to back up on to the floor. Id. Under the lease, the tenant was responsible for all maintenance and repair of the premises, but the trust reserved the right to enter the premises to make inspections and repairs. Id. ¶ 2. It was undisputed that the trustees had no prior knowledge of any drainage backup problem. Id. ¶ 3. Under these circumstances, our Supreme Court held that reservation of the right to inspect and repair did not give rise to a duty to inspect and repair the drainage pipe:
Only when the landlord who has reserved this right has notice of facts indicating the need to make an inspection should it be charged with knowledge of any dangerous condition that a reasonable inspection would have revealed. Here, as noted, the owner had no knowledge of any accidents, any drainage backups, or any other fact that would have put it on notice prior to [the plaintiff's] accident. Under these circumstances, the owner had no duty to inspect after commencement of the lease.
Id. ¶ 16.
{26} Case law from other jurisdictions reflects that a similar rule applies to lessors of chattels. A lessor's reservation of the right to inspect a leased chattel and take remedial action does not impose on the lessor a duty of maintenance and repair owed to a third party. In Arriaga v. CitiCapital Commercial Corp. , 167 Cal.App.4th 1527, 85 Cal.Rptr.3d 143 (2008), the plaintiff was injured when his finger became entangled in a glue speading machine that his employer leased from the defendant's finance company. Id. at 146. The plaintiff sued the finance company, arguing that the company reserved the right in the lease to inspect the glue spreader and that this right gave rise to a duty to exercise reasonable care to inspect the machine for defects. Id. at 154. On appeal, after the trial *1268 court dismissed the plaintiff's negligence claim against the lessor, the California Court of Appeals rejected the argument. Id. After noting that the lessor had no notice of the defect, the court held that "the reservation of the right to inspect, in and of itself, does not vest such control over the equipment as to impose on the lessor any such obligation to a third party." Id. Similarly, in Garner v. Todd , 361 N.W.2d 459, 460 (Minn. Ct. App. 1985), the plaintiff's employer leased a tractor-trailer rig from the defendant. The plaintiff sued the defendant after he fell off the trailer and was injured. Id. On appeal following dismissal of the plaintiff's claim, the plaintiff argued that, because the lease agreement granted the lessor the right to inspect and remove the trailer, the lessor owed a duty to ensure that the trailer was safe. Id. at 461. The Minnesota Court of Appeals disagreed: "There is no support for appellant's further argument that [the lessor] owed a duty of care under the principles of common law negligence. ... There is no evidence that [the lessor] ... assumed a duty to keep the equipment in repair[.]" Id. ; cf. Zimprich v. Broekel , 519 N.W.2d 588, 594 (N.D. 1994) (holding that, under the express terms of the subject truck lease, the lessor retained responsibility for maintenance and repairs; lessee, which had only a general right to inspect, owed no duty of maintenance and repair to third party).
{27} The Restatement (Second) of Torts Section 414 (1965) and its comments, while in the context of an independent contractor-employer relationship, further support the general principle that retention of a general right to inspect is insufficient to establish retained control that gives rise to a duty of care owed to third parties:
[T]he employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail.
Restatement (Second) of Torts § 414 cmt. c (1965); see, e.g. , Schaefer v. Universal Scaffolding & Equip ., LLC , 839 F.3d 599, 606-07 (7th Cir. 2016) (holding that premises owner did not retain sufficient control over construction of scaffolding to subject it to negligence liability); Harmon , 1981-NMCA-005, ¶¶ 19-20, 95 N.M. 501, 623 P.2d 1015 (holding that, while the defendant retained the right to inspect the work in process at all times, it did not retain any control and owed no duty to keep the workplace safe).
{28} Hernandez maintains that Grando's retained control over the maintenance and upkeep of the truck because the Agreement permits Grando's to inspect the vehicle, perform maintenance if Creed fails to do so and remove any vehicle it if determines that the vehicle is being used beyond its capacity. In light of the foregoing authority, Grando's retention of the right to inspect, remove, or perform maintenance upon the truck if Creed failed to meet its maintenance and repair obligations did not, by itself, establish "retained control" sufficient to impose a duty of care on Grando's.
3. A Question of Fact Regarding Grando's Notice of the Truck Step Defect Precluded Summary Judgment on Hernandez' Negligence Claim
{29} As discussed above, Gourdi and Arriaga stand for the proposition that, while a lessor of land or chattel, respectively, who reserves a right of inspection and repair is not generally subject to a duty to do so, such a duty will arise where the lessor also has notice of a defect or unsafe condition. See Gourdi , 1996-NMSC-076, ¶ 16, 122 N.M. 675, 930 P.2d 812 (holding that "[o]nly when the landlord who has reserved this right has notice of facts indicating the need to make an inspection should it be charged with knowledge of any dangerous condition"); Arriaga , 85 Cal.Rptr.3d at 154 (noting that the lessor had no notice of the defect in the glue spreading machine; holding only that "the reservation of the right to inspect, in and of itself , does not vest such control over the equipment as to impose on the lessor any *1269 such obligation to a third party" (emphasis added) ).
{30} In an affidavit submitted with his response to Grando's summary judgment motion, Hernandez averred, "On many occasions prior to June 21, 2013 I had reported problems with [the 1995 blue Freightliner's] side-step to Carlos Ramirez, my supervisor, and also to ... Grandos. I specifically informed them both that the step was broken, loose. Mr. Grandos' response [sic] either to ignore me, do nothing, or he would simply put wire around the step to try and hold it in place[.]" Hernandez's affidavit testimony established a question of fact whether Grando's had notice of the defect, and thus whether it owed and breached a duty to properly and adequately repair the defective truck step. For this reason, the district court erred in granting summary judgment in Grando's favor on Hernandez's negligence claim.
D. The District Court Did Not Err in Dismissing Hernandez's Strict Product Liability Claim
{31} In his affidavit filed in support of Grando's summary judgment motion, Grandos stated, "At the time of the lease [by Grando's of trucks to Creed,] the steps on the 1995 blue Freightliner were made of steel and were not defective." Hernandez did not produce any evidence to contradict this assertion, i.e., that the steps were broken or otherwise defective at the time Grando's leased the trucks to Creed. Instead, Grando's argued only that as Grando's owner, Grandos necessarily would have been aware at all times of the condition of the trucks.
{32} Strict product liability requires proof, among other elements, that the product was sold or leased in a defective condition. See Fernandez v. Ford Motor Co. , 1994-NMCA-063, ¶ 26, 118 N.M. 100, 879 P.2d 101. We can assume for purposes of argument that Grando's principal was aware of the condition of the truck's step at the time it was leased to Creed, but that simply begs the question. Because Hernandez had no evidence with which to establish a question of fact as to whether the truck's steps were in an defective condition at the time the truck was leased to Creed, the district court did not err in dismissing the strict liability claim.[4]
CONCLUSION
{33} We reverse the district court's grant of summary judgment in favor of Grando's and remand for further proceedings consistent with this opinion.
{34} IT IS SO ORDERED.
WE CONCUR:
M. MONICA ZAMORA, Judge
EMIL J. KIEHNE, Judge

Before addressing Hernandez's arguments, we note that his brief in chief and Grando's answer brief both fail to comply with the requirement in Rule 12-305(D)(1) NMRA to use fourteen-point or larger font. Further, Hernandez failed to comply with Rule 12-318(A)(4) NMRA by not including a statement in his brief in chief explaining how any of the issues were preserved in the court below, and Grando's answer brief exceeded the 11,000-word limit established by Rule 12-318(F)(3). Grando's request that we sanction Hernandez for his failure to comply with the Rules of Appellate Procedure is denied. Both parties are admonished to comply with these rules.
Notwithstanding his failure to comply with Rule 12-318(A)(4), Hernandez preserved his three arguments by advancing them in either his complaint or his response to Grando's summary judgment motion.

In admitting paragraph 17 of Hernandez's complaint, Grando's admitted that it was required to abide by state and federal laws, including those to which motor carriers are subject, concerning systematic inspection, repair, and maintenance of trucks. However, Hernandez is incorrect in claiming that Grando's admitted that it was a motor carrier.

Two judges on the panel that decided Harmon concurred only in the result.

Hernandez challenged the district court's dismissal of his warranty claim in his docketing statement but did not address the point in his brief in chief. For that reason we do not address it. See Magnolia Mountain Ltd., P'ship v. Ski Rio Partners, Ltd. , 2006-NMCA-027, ¶ 34, 139 N.M. 288, 131 P.3d 675 (noting that "an issue is abandoned on appeal if it is not raised in the brief in chief").